**Teri Smith TYLER, Plaintiff,**

v.

**James CARTER, William Clinton, Ross Perot, American Cyanamid, Iron Mountain Security Corporation, Defense Intelligence Agency, IBM, David Rockerfeller, Rockerfeller Fund, BCCI, NASA, Defendants.**

No. 92 Civ. 8658 (CSH).

United States District Court,
S.D. New York.

Nov. 5, 1993.

Teri Smith Tyler, pro se.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for defendants President Clinton, Defense Intelligence Agency and Nat. Aeronautics and Space Admin.

William J. Hoffman, Asst. U.S. Atty., New York City, for U.S.

*MEMORANDUM OPINION
AND ORDER*

HAIGHT, District Judge:

This case is before the Court on a motion to dismiss by defendants President Clinton, the Defense Intelligence Agency, and National Aeronautics and Space Administration (the "Federal defendants"). Plaintiff has also filed an order to show cause why the World Trade Center Bombing Trial should not be enjoined. For the reasons set forth below, plaintiff's order to show cause is denied, and the Clerk of the Court is directed to dismiss the complaint.

*BACKGROUND*

Plaintiff Teri Smith Tyler, appearing *pro se,* filed a complaint in December 1992 alleging a bizarre conspiracy involving the defendants to enslave and oppress certain segments of our society. Plaintiff contends she is a cyborg, and that she received most of the information which forms the basis for her complaint, through "proteus", which I read to be some silent, telepathic form of communication. *See* complaint, at 1, and Affidavit accompanying November 1993 Order to Show Cause, at ¶ g. She asserts that the defendants are involved in the "Iron Mountain Plan", which provides for the reinstitutionalization of slavery and "bloodsports"

(which she identifies as death-hunting[1] and witch-hunting), and the oppression of political dissidents, herself included. Plaintiff's complaint alleges a number of personal indignities visited upon her by defendants: "strafing of my dormitory room by planes and helicopters, the electronic bugging of my student rooms and apartments, deliberate noise harassment, blasting of loud rock music with lyrics designed for witch-hunts (music about social pariahs) ... students following me around to prevent me from studying, whispering campaigns and social ostrification ..." Complaint, at 1–2. Plaintiff also makes the following allegations against the defendants. Former President Jimmy Carter was the secret head of the Ku Klux Klan; Bill Clinton is the biological son of Jimmy Carter; President Clinton and Ross Perot have made fortunes in the death-hunting industry, and are responsible for the murder of at least 10 million black women in concentration camps, their bodies sold for meat and their skin turned into leather products. The defendants are also responsible for breeding farms, which turn out 2,000 black girls a year, who are then sold for recreational murder or as human pets. Additionally, the defendants utilize weather control and earthquake technology to threaten other countries that object to the Iron Mountain plan.

Plaintiff asks the Court to grant her the following relief:

1. $5.6 billion in compensatory and punitive damages;

2. A physical accounting of all black women born since 1940, including their present whereabouts, and for those who have died, an investigation into how they died;

3. The purchase of land in Africa for the emigration of abused black women;

4. The bringing to justice of those responsible for the American holocaust;

5. An investigation into the foster care system, and a physical accounting of all black children placed into foster care;

6. An end to slavery in the United States;

7. The end of the cyborg program run by NASA, the Defense Intelligence Agency, American Cyanimid and IBM;

8. An end to the organ-donor program.

While plaintiff was trying to effect proper service of the summons and complaint on the defendants, she made a number of appeals to the Court for interim relief in the form of Orders to Show Cause. On January 20, 1993, she asked the Court to enjoin the inauguration of President Clinton. The Court denied her request as moot. In August, 1993, she moved to enjoin the installation of Louis Freeh as Director of the FBI on the ground that Clinton appointed Freeh only so Freeh could cover up evidence of Clinton's wrongdoing. That motion was denied, as it lacked a sufficient evidentiary basis.

Presently before the Court is an Order to Show Cause why the Court should not enjoin the trial in the World Trade Center bombing case, now proceeding in this Court before Judge Duffy. Plaintiff alleges that President Clinton ordered the bombing of the World Trade Center in order to justify war with Iraq. In support of her application, plaintiff describes certain "proteus" communications she had with other individuals. Plaintiff alleges that the United States invaded Panama and arrested General Noriega because Noriega objected to United States soldiers raiding Indian tribes in Central America for child sex slaves to torture in American cocaine based thrill-killing rackets. Plaintiff contends she wrote to Noriega asking him to join in her lawsuit, but that United States soldiers holding Noriega beat him when he asked for his mail.

Plaintiff asserts that in 1988, Rajiv Ghandi spoke to her through "proteus" and informed her that he was being held prisoner and sexually abused by a man whom he had caught stealing from the funds generated by the Bhopal disaster settlement. According

---

1. Death-hunting is described by plaintiff as follows: "In death-hunting, teams of pimps and harriers (women working for pimps) follow a black woman they want to force into sexual slavery and snuff rackets, try to wreck her employment prospects, isolate her socially, break her up with friends and family, often they try to force her onto welfare because it often circumscribes her choice of places to live. Sometimes members of a woman's family or her mate will be cooperative or part of death-hunting teams because participants get paid." Complaint, at 4.

to plaintiff, Yasser Arafat tried to confirm Ghandi's tale of abuse on behalf of the plaintiff, to no avail.

Plaintiff additionally contends that Gulf War against Iraq was undertaken so that America could restock its sexual slavery camps, which had been depleted. According to plaintiff, 40,000 Iraqi soldiers captured by the United States, selected for their physical attractiveness, have been brought to this country where they were "being beaten, forced to run gauntlets and homosexually gang-raped by American soldiers." Plaintiff claims to have confronted Secretary of Defense Cheney with evidence of this allegation. Cheney, through "proteus", purportedly told the plaintiff, "Well, we were so sick and tired of killing black girls. We just had to put some variety back into our death-hunting industry. And they [Persians] are incredibly beautiful. The beauty of the face heightens the pleasure of the kill. I know of no higher pleasure than the gang-rape of exceedingly beautiful people."

Additionally, plaintiff alleges that the Serbian government, the "Nazi Bund", the Bank of Commerce and Credit International ("BCCI") are also involved in the conspiracy.

Attached to plaintiff's papers, and apparently offered to support her claim, are a number of exhibits. Most prominent among the exhibits is a book by Robert Ellis Smith entitled *Privacy: How to Protect What's Left of It* (1979), and a four page illustrated pamphlet advertising pornographic movies starring young men. Plaintiff has circled a number of photos of naked men who appear to be of Mediterranean or Latin American descent, which I interpret as her evidence that Iraqi and Central American men are enslaved in pornographic "rackets".

Plaintiff appears to have effected service on few of the named defendants. Although IBM and BCCI each made an appearance (and successfully moved to have the claims against them dismissed), plaintiff never filed proof of service against either defendant pursuant to Fed.R.Civ.P. 4(g). Service was eventually made against the Federal Defendants, but it may have been effected more than 120 days after filing. *See* Fed.R.Civ.P. 4(j).

IBM's motion to dismiss the complaint against it was granted by Order dated September 29, 1993. That same order dismissed the claims against BCCI, to the extent they could be asserted against the Superintendent who was supervising the dissolution of BCCI. Currently pending before the Court is a motion to dismiss by the remaining defendants, and the Order to Show Cause to enjoin the World Trade Center bombing trial.

## DISCUSSION

In *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), a state prisoner commenced a federal action by filing a motion to proceed *in forma pauperis* and a complaint under 42 U.S.C. § 1983 charging prison officials with violating his constitutional rights. The *in forma pauperis* statute, 28 U.S.C. § 1915(d), authorizes courts to dismiss an *in forma pauperis* claim if, *inter alia*, the action is "frivolous." The district court dismissed the complaint *sua sponte* as frivolous under § 1915(d) on the ground that it failed to state a claim upon which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Seventh Circuit reversed. The Supreme Court affirmed the court of appeals. It held that "a complaint filed *in forma pauperis* is not automatically frivolous within the meaning of § 1915(d) because it fails to state a claim." *Id.*, at 331, 109 S.Ct. at 1834.

The Court in *Neitzke* contrasted the judicial screening process available under the *in forma pauperis* statute with cases where the plaintiff pays the filing fees. Section 1915(d) screening reflects, the Court stated, congressional recognition "that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.*, at 324, 109 S.Ct. at 1831. A complaint filed by a fee-paying litigant subject to economic incentives can be dismissed under Rule 12(b)(6), but in such a case, the Court stated, Rule 12(b)(6) "does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. District judges looking to dismiss claims on such

grounds must look elsewhere for legal support." *Id.,* at 327, 109 S.Ct. at 1832 (footnote omitted). But the Court left open the question whether a district judge could ever dismiss a complaint *sua sponte* under Rule 12(b)(6). *Id.,* at 329 n. 8, 109 S.Ct. at 1834 n. 8. ("We have no occasion to pass judgment, however, on the permissible scope, if any, of *sua sponte* dismissals under Rule 12(b)(6).").

■ Among the factual claims subject to § 1915(d) dismissal as frivolous "are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.,* at 328, 109 S.Ct. at 1833. The claims of plaintiff at bar may be so characterized. The question is whether such claims asserted by a fee-paying plaintiff are subject to *sua sponte* dismissal by a district court under Rule 12(b)(6). I hold that they are.

A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense. The policies arguing against *sua sponte* Rule 12(b)(6) dismissals do not apply in these circumstances. The author of claims as irrational as these cannot be regarded as subject to the economic incentive to refrain from frivolous actions imposed by filing fees and court costs upon rational paying litigants. Similarly, a *sua sponte* dismissal of a complaint such as this cannot reasonably be said to deprive such a plaintiff of the opportunity of "clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action." *Neitzke* at 329–30, 109 S.Ct. at 1834. If this Court cannot order *sua sponte* dismissal of this complaint under Rule 12(b)(6), no district court can ever dismiss *sua sponte* any complaint under the Rule.[2] I do not think that is the law.

■ The Clerk of the Court is directed to dismiss the complaint as to all defendants with prejudice and without costs. The Clerk is directed to refund to plaintiff her filing fee. Plaintiff's motion by Order to Show Cause to enjoin the World Trade Center bombing trial is denied.

It is SO ORDERED.

---

**2.** Although the Federal defendants have moved to dismiss citing Rule 12(b)(6), I am dismissing this case *sua sponte.* Granting the Federal defendants' motion to dismiss would affect claims against only those defendants. Because I am acting *sua sponte,* the dismissal is effective as to all of the defendants.