Uri TORNHEIM, Plaintiff,

v.

Lindsey EASON, in his official capacity as Sheriff of the City of New York, Doreen Spindel a/k/a Doreen Kohn, Saul E. Feder d/b/a Regosin, Edwards, Stone & Feder, Robin C. Marvin, and Stephen J. Fiala, in his official capacity as Clerk and Register of Richmond County, Defendants.

No. 04 CIV.6779(CM)(MDF).

United States District Court, S.D. New York.

Dec. 10, 2004.

Uri Tornheim, Wesley Hills, NY, Pro se.

**MEMORANDUM DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS**

MCMAHON, District Judge.

Plaintiff Uri Tornheim ("Tornheim") and defendant Doreen Spindel ("Spindel") di-

vorced in 2001, with a judgment of divorce dated November 20, 2001 (the "Judgment") by Justice Yancey of the New York State Supreme Court of Kings County. Tornheim's complaint arises from Spindel's unilateral sale of their marital residence, which she effected pursuant to a procedure specified in the Judgment.

Tornheim has sued Spindel; the Sheriff of New York City, Lindsey Eason ("Sheriff"); Spindel's lawyer, Saul E. Feder ("Feder") and Feder's law firm; and Robin Marvin ("Marvin"), purchaser and current occupant of the house at issue.[1] His complaint is brought pursuant to 42 U.S.C. § 1983, with pendent state law claims under New York Judiciary Law § 487 and New York common law of fraud. At the root of all of his claims is the allegation that Spindel and Feder effected the sale of the marital residence by submitting allegedly perjurious affidavits to the Sheriff, thereby inducing the Sheriff to participate in the sale of the residence pursuant to the procedure set forth in the Judgment. Complaint ¶ 19.

Tornheim claims his Fourth Amendment rights were violated by all defendants when Feder and Spindel used the Sheriff to (1) "seize the papers and effects" of the sale of the residence, which Tornheim claims were rightfully his (Compl.¶ 44) and (2) seize the marital residence by selling it (Compl.¶ 45). He claims that Spindel and Feder violated his federal civil rights and committed fraud under the common law of New York by swearing falsely in affidavits that Tornheim "failed and refused to execute the conveyance deed" for the sale of the marital residence (Compl.¶ 50). He further claims that Feder, and Feder's law firm, violated New York Judiciary Law § 487 by preparing and submitting "false

---

1. Tornheim voluntarily dismissed his case against Stephen J. Fiala, the Clerk and Register of Richmond County, by Notice of Dismissal filed 11/12/04.

and perjurious affidavits." (Compl.¶ 53). In addition, he asserts a claim of statutory legal fees under 42 U.S.C. § 1988 for his civil rights claims. Finally, he claims $4,000 per month from Marvin for the "fair and reasonable use and occupancy" of the residence since September 10, 2003.

Defendants Spindel and Feder each have filed motions to dismiss. Feder moves for dismissal pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, and Fed.R.Civ.P. 9(b), for failure to plead fraud with sufficient particularity. Spindel moves pursuant to Fed.R.Civ.P. 12(b)(1), lack of subject matter jurisdiction, and Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

For the reasons discussed below, the motions pursuant to Rule 12(b)(6) are granted, and the case is dismissed as to defendants Feder and Spindel. The case is dismissed *sua sponte* as to Marvin.

### Standard for a Motion to Dismiss

For purposes of analyzing a motion to dismiss, the pleadings should be read in the light most favorable to the non-moving party, and the plaintiff's allegations as to the material facts should be taken as true. *See Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal under Fed. R. Civ. P. 12(b) is appropriate, therefore, only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In considering a motion to dismiss, the court generally must limit its analysis "to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). In addition, the court may consider public records, including a state court's divorce decree, in deciding a motion to dismiss, even if that document was not incorporated in the complaint by reference. *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998); *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004).

### Facts

Tornheim and Spindel were parties to a bitterly contested matrimonial action that went on for years in the Kings County Supreme Court. The Judgment issued November 20, 2001. (Compl.¶ 9.) It was affirmed by the Appellate Division: Second Department on March 3, 2003. *Tornheim v. Tornheim,* 303 A.D.2d 399, 755 N.Y.S.2d 878 (2d Dep't 2003). The judgment was preceded by a written decision issued by Justice Virginia E. Yancey, who presided at the trial. In that decision, Justice Yancey awarded Spindel custody of the child of the marriage, Avrumie, and sole possession of the marital residence until Avrumie reaches majority. Spindel was also granted the right to sell the marital residence before Avrumie reaches majority.

■ In accordance with the decision, the final judgment of divorce was issued as follows:

ORDERED, ADJUDGED and DECREED that the Defendant Doreen Tornheim is authorized to sell the mari-

tal home ... at any time hereafter until [the couple's child] Avrumie reaches his eighteenth (18th) birthday ... The Defendant Doreen Tornheim is authorized and empowered to execute both a Broker's Agreement and/or the Contract of Sale, in the names of, and on behalf of, both herself and the Plaintiff Uri Tornheim, and same shall be fully binding on both parties. Thirty (30) days prior to the Closing thereof, the Plaintiff [Tornheim] shall execute a Deed and all other transfer documents to transfer said property to the purchaser thereof on five (5) days notice from Defendant or her attorney to Plaintiff of Defendant's request that Plaintiff do so. Upon the submission of an ex parte Affidavit from the Defendant to the Sheriff of the Plaintiff's failure or refusal to do so, the Sheriff of Richmond County shall execute transfer documents for, and in lieu of, the Plaintiff [Tornheim].

(Compl. ¶ 11.) [2]

The Judgment was carefully crafted to deal with a situation that the trial jurist obviously anticipated—namely, that Tornheim might try to prevent Spindel from exercising her absolute right to sell the marital residence without his approval or input—indeed, without his having any say in the matter—before Avrumie turned eighteen. The judgment carefully prescribes a procedure to be followed in order to effect the sale of the house. Spindel was empowered to sign a contract of sale and brokerage agreement that would bind Tornheim as well as herself—even though he did not sign it. No provision in the judgment required Spindel to give Tornheim advance notice of her intention to sell the residence or give him or his lawyer any opportunity to review the contract of sale and the brokerage agreement before she bound him by her signature.

Tornheim was obligated, by the terms of the judgment, to execute the Deed and all other transfer documents within five days after receiving notice of Spindel's request that he do so. The only condition imposed by the judgment was that he be asked to sign those documents. If he failed or refused to sign after the five day notice period expired, Spindel was empowered to submit an ex parte affidavit to the Sheriff of Richmond County, where the marital residence was located, attesting to Spindel's failure or refusal (either would do) to abide by the obligation imposed on him by the terms of the judgment. Upon receipt of such an affidavit, the Sheriff of Richmond County was directed by the court to execute the transfer documents on Tornheim's behalf.

Tornheim alleges that Feder and Spindel "concealed" the brokerage agreement and contract of sale on the marital residence, and revealed Spindel's intention to sell the house to Tornheim and his attorney, Ernest H. Hammer ("Hammer"), on

---

2. Tornheim alleges, at ¶ 12 of the Complaint, that this Judgment differed in some respect from the underlying decision, and the Complaint purports to quote from the allegedly different portion of Justice Yancey's decision. I do not have a copy of that decision. I strongly suspect that plaintiff did not quote it verbatim, as words appear in brackets in the relevant portion of the complaint. However, the Judgment supercedes any prior decision, so I need not address his arguments about an alleged (but not at all apparent) disparity between those documents.

If, by making this allegation, Tornheim is contending either fraud or mistake in connection with the terms of the Judgment as entered and affirmed, this Court lacks subject matter jurisdiction to consider the matter. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). If Tornheim wants to alter, amend or correct the terms of the judgment he will have to return to Kings County Supreme Court to do so.

July 16, 2003, 46 days after the contract of sale was executed. (Compl.¶¶ 13, 14.) I am constrained to note that nothing in the Judgment compelled Spindel to tell her ex-husband about her intention to sell the house until it was time to get his signature (or try to get his signature) on the actual documents of conveyance—which, per the terms of the Judgment, is 30 days prior to the scheduled closing date, not at or about the time the contract of sale is signed.

Tornheim effectively alleges that Spindel complied with the requirement of the judgment, by attempting to get him to execute the Deed and other conveyance documents. According to the complaint, on July 16, 2003, Spindel's attorney, Feder, sent Tornheim's attorney, Hammer, a letter that stated, in pertinent part:

> Pursuant to the provisions contained on Page "7" of the November 20, 2001 Judgment of Divorce..., Doreen Tornheim executed a May 30, 2003 Contract of Sale to Robin C. Marvin for a $325,000 Selling Price, and the parties would like to Close same 30 days hence. I am therefore writing to ask Uri Tornheim's cooperation in executing the required Deed and all of the required transfer documents,—in this office,—at 2 P.M. on July 28, 2003,—so as to allow the Closing to take place.

(Compl.¶ 13.) The letter gave Tornheim more than the five days' notice required by the judgment.

Hammer responded to this request with a letter dated July 23, 2003 quoting the relevant language of the Judgment and requesting "(a) copies of the 'Broker's Agreement and/or the Contract of Sale', which was allegedly executed in the name of Uri Tornheim, and (b) the 'Deed and all other transfer documents', for my review." (Compl.¶ 15.)

Feder responded on July 25, 2003, with a letter stating, in part, "In response to your inquiry today... I look forward to your written confirmation of your intention of joining Uri Tornheim in my office on July 28, 2003 ... to go over the relevant documents and to advise him in connection therewith." (Compl.¶ 16.)

Hammer responded on July 25, 2003, with a letter stating, in part, "My prior correspondence to you was clear and unequivocal, that you should provide me with" copies of the contract and transfer documents for review. (Compl.¶ 17.)

Tornheim contends that Feder "refused to provide copies" of the requested documents. (Compl.¶ 18.) He then alleges:

> [D]efendant Feder prepared a false and perjurious *ex parte* affidavit for defendant Doreen to execute, wherein Doreen falsely stated under oath that Plaintiff failed and/or refused to execute the Deed and all of the transfer documents to transfer the subject property to the Purchaser,—and that such affidavit serves as Doreen's *ex parte* request for the Sheriff to execute the Deed and transfer documents for, and in lieu of, the Plaintiff Uri Tornheim. Defendant Feder notarized the foregoing ex-parte false affidavit over date of August 20, 2003.

(Compl.¶ 19.)

Tornheim contends that Feder transmitted correspondence to the Sheriff's counsel, Jeffrey Neil Grossel ("Grossel"), in which Feder "falsely stated that Plaintiff failed and refused to execute the Deed and the ancillary closing documents." (Compl.¶ 20.) Feder sent Spindel's affidavit to Grossel, along with copies of the Broker's Agreement, the Contract of Sale, the proposed Deed, and all other transfer documents "to be signed by the Sheriff, in lieu and on behalf of Plaintiff." (Compl.¶ 21.) On August 26, 2003, the Sheriff signed and executed the Deed and

all other transfer documents. (Compl. ¶ 22.)

Tornheim argues that Feder's willingness to supply the Sheriff with the transfer documents "demonstrates" that Hammer's earlier requests to review those documents were "highly reasonable and justified in all respects," and that Spindel's and Feder's written statements to the Sheriff and Grossel of Tornheim's "refusal and/or failure to execute such papers, were utterly false." (Compl. ¶ 24.) Tornheim contends that Spindel and Feder wanted to "celebrate the closing, distribution and squandering the sale proceeds, without any accounting to, or involvement of, Plaintiff," (Compl. ¶ 25.), preferring to "conduct such a sale in their own secretive environment." (Compl. ¶ 26.)

Tornheim notes that the Sheriff, "by executing the Deed on behalf of Plaintiff, did not conduct a judicial sale, nor did he conduct a Judgment Creditor's Execution Sale. The Sheriff's August 26, 2003 signature was strictly in lieu, and on behalf, of Plaintiff's signature." (Compl. ¶ 27.) Although he specifically avers that the sheriff was not performing any function that he is empowered to perform by virtue of his office, plaintiff nonetheless claims that the Sheriff acted "pursuant to State powers." (Compl. ¶ 28.)

### Discussion

■ In essence, Tornheim argues that his ex-wife and her lawyer violated the terms of the divorce judgment by falsely attesting to the Sheriff that he had refused to sign the transfer documents, when in fact it was they who had refused his perfectly reasonable (in his mind) request that he and his lawyer be allowed to review the documents before the date set for signing them. Of course, this Court has no jurisdiction over such a claim; it sounds purely in state law, and the parties are all New Yorkers. Indeed, such a claim is properly brought in Kings County Supreme Court, which is perfectly capable of dealing with claims that one party to a judgment is in contempt of court for failing to abide by the terms of the judgment.[3]

In the hope of finding a new forum, Tornheim has attempted to graft his claim onto the United States Constitution, hanging his hat on the fact that a public official—the Sheriff—was chosen by the court to execute the sales documents in Tornheim's stead. Unfortunately, Tornheim has not stated any federal claim against his ex-wife or her attorney. He also has not stated any federal claim against the innocent purchaser of the house. And I very much doubt that he has stated any federal claim against the Sheriff, either—though before I finally resolve that question, I will need a motion from the Sheriff and a response from Tornheim.

### 1. The First Cause of Action

Tornheim's first cause of action alleges that all defendants violated his Fourth Amendment rights by selling the house on the strength of the Sheriff's signature. Specifically, he contends that Spindel and Feder "misusing the Sheriff's powers," have unlawfully seized his papers (the Deed and closing documents, which he seems to allege belonged to him), effects, and residence. (Compl. ¶ 44.) He further states, without elaboration, that these acts also violated his rights "of due process of law, and equal protection under the law,

---

**3.** After reviewing the many decisions of the Appellate Division: Second Department in connection with this divorce, I can understand why Mr. Tornheim might be reluctant to return to King County Supreme Court to argue that his ex-wife and her lawyer were in contempt of that court for failing to abide by the terms of the judgment.

which rights are guaranteed by the [F]ourteenth Amendment." (Compl.¶¶ 45, 46.)

■ Spindel's and Feder's motions to dismiss must be granted because no constitutional tort claims lies against them. The Fourth Amendment proscribes only unreasonable *governmental* action; it is "wholly inapplicable" to actions taken by private citizens. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (quoting *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980)); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *see also United States v. McGuire,* 381 F.2d 306 (2d Cir.1967).

■ The same is true of the Fourteenth Amendment; which also applies only to state action. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (explaining that "only a state or a private person whose action 'may be fairly treated as that of the State itself,' ... may deprive him of 'an interest encompassed within the Fourteenth Amendment's protection").

■ Feder, Spindel (and Marvin, as to whom I am dismissing the complaint *sua sponte* ) are all private citizens, not state actors. They participated in a purely private transaction—the sale of a privately-owned house. They cannot be sued for violating the Fourth and Fourteenth Amendments in connection with their effecting of that sale; no action lies against them pursuant to 42 U.S.C. § 1983.

Tornheim tries to transform Spindel and Feder and Marvin into state actors by virtue of the fact that they used a public official—the Sheriff—to effect the sale in lieu of Tornheim. But their reliance on the Sheriff to carry out a court order that would effect a *private* sale of property did not convert their conduct into "governmental" conduct, or make them state actors.

*See, e.g., Lugar v. Edmondson Oil,* 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (noting that "a private party's mere invocation of state legal procedures" does not necessarily constitute " 'joint participation' or 'conspiracy' with state officials" for purposes of 42 U.S.C. § 1983). In fact, Tornheim admits in his Complaint that the Sheriff executed the Deed and transfer documents "strictly in lieu, and on behalf, of Plaintiff[ ]" and not in connection with any official action that the law empowers the Sheriff to take, such as a judgment creditor's execution sale. (Compl.¶ 27.) His own mouth condemneth him.

■ Tornheim's Fourteenth Amendment claims of due process and equal protection rights also fail as a matter of law. Tornheim was afforded all the process of law that he was due in connection with the sale of the marital residence during the divorce proceedings. Tornheim does not allege that he was subjected to disparate treatment by virtue of the terms of the judgment, which would be necessary for him to state an equal protection claim— nor could this court take cognizance of such an allegation, since I cannot enter any order that would undermine the validity of that judgment.

The First Cause of Action is, therefore, dismissed as to Spindel and Feder.

■ I am also dismissing this cause of action as to Marvin, *sua sponte.* A district court has discretion to dismiss claims *sua sponte. Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995.WL 316935 (N.D.N.Y. May 23, 1995) (citing *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Tyler v. Carter,* 151 F.R.D. 537 (S.D.N.Y.1993)). The *Pourzandvakil* court noted several factors it considered in dismissing plaintiff's claims *sua sponte:* "(1) [P]laintiff's claims lack an arguable

basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants." Tornheim's claims against Marvin—a good faith purchaser of the residence, even according to the Complaint—are patently frivolous and without any basis, arguable or otherwise, in fact or law.

### 2. The Second Cause of Action

In his second cause of action, Tornheim claims that Spindel and Feder violated § 1983 by executing false affidavits in order to effect the sale of the marital residence. (Compl.¶ 50.) The essence of Tornheim's claims is that he never "refused" to sign the documents, and Spindel's and Feder's affidavits to the effect that Tornheim "failed and/or refused to execute the Deed and all the transfer documents," (Compl.¶ 19), were false and perjurious.

Because Spindel and Feder are not state actors, this federal claim, too, lacks merit and must be dismissed.[4]

### 3. The Fourth Cause of Action

Plaintiff's fourth cause of action against Spindel and Feder, for prevailing party legal fees pursuant to 42 U.S.C. § 1988, must be dismissed because Tornheim is not a prevailing party on any § 1983 claim against Spindel and Feder. Indeed, since prevailing defendants may be entitled to attorneys' fees under § 1988—and since

this case appears to be one of those extremely rare cases in which the prevailing defendants should be reimbursed for their legal fees—I direct that plaintiff show cause why he should not be required to pay the legal fees incurred by Spindel, Feder and Feder's law firm and Marvin in connection with the dismissal of the purported federal civil rights claims against them. See, e.g., Eastway Const. Corp. v. City of New York, 821 F.2d 121, 123 (2d Cir.1987) (noting that attorney's fees may be awarded to a prevailing defendant under § 1988 when the plaintiff's claim was frivolous).

### 4. The Third and Fifth Causes of Action

Tornheim's remaining claims against Spindel, Feder, the Feder law firm and Marvin are state law claims relating to whether the actions of these individuals ran afoul of the Judgment. If I dismiss the First Cause of Action against the Sheriff—as I suspect I will, once the motion is made and briefed—I will decline to exercise pendent jurisdiction over these claims and will dismiss them. United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Given the nature of the claims asserted, it is particularly appropriate that I not decide them on the merits, but give the state court an opportunity to do so—if plaintiff dares bring his claims in that forum.

### Scheduling Order

From the face of the Complaint, it appears that the lone claim against the Sheriff will also have to be dismissed—on the

---

4. I note, parenthetically, that the Judgment permits Spindel to submit the ex parte affidavit to the Sheriff if Tornheim "fails or refuses" to sign the papers upon five days notice of a request that he sign them. Nowhere in the complaint does Tornheim allege that he signed the papers, as required by the Judgment. Thus, it appears that he "failed" to sign them—whether or not he "refused" to do so. But if he failed to sign them, the ex parte affidavit was not false at all!

ground of qualified immunity, if nothing else, since it is hard for me to see how any reasonable person in the Sheriff's position could have thought he was violating plaintiff's constitutional rights by executing the sale documents upon presentation of an affidavit that, on its face, conformed to the terms of the judgment. *Stephenson v. Doe*, 332 F.3d 68 (2d Cir.2003). I am sure there are other grounds on which the Sheriff might rely as well. Indeed, as previously intimated, it is possible that he was not acting under color of state law in performing the task given to him by Justice Yancey in the Judgment of Divorce. He need prevail on only one ground in order to procure dismissal.

Nonetheless, I will not dismiss the claims against the sheriff sua sponte. I hereby direct the Corporation Counsel of the City of New York to make a motion for judgment on the pleadings or for summary judgment, as appropriate, by December 23, 2004. Plaintiff must respond to this motion in writing by January 7, 2005. Those dates will not be extended.

At the same time, plaintiff must show cause why he should not be taxed with the attorneys' fees of the defendants who have already prevailed on the bogus federal civil rights claims he asserted against them.

If reply papers are required on the Sheriff's motion, I will direct the Corporation Counsel to file them. Otherwise, I will read the papers, decide the motion, and at that point I will enter an appropriate order disposing of all issues in this case.

Spindel, Feder and Marvin should all submit information about such portion of their attorney's fees as could arguably be attributable to the litigation over the Section 1983 and 1988 claims, including appearance fees for today's conference.

This constitutes the decision of the Court.