**M. Eugene GIBBS, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Case No. 3:11–cv–75–J–34TEM.**

United States District Court, M.D. Florida, Jacksonville Division.

March 31, 2012.

---

2. Dkt No. 9 (Sept. 16, 2011).

M. Eugene Gibbs, Florence, SC, pro se.

Collette Bridget Cunningham, U.S. Attorney's Office, Jacksonville, FL, for Defendants.

### ORDER

MARCIA MORALES HOWARD, District Judge.

This case is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 27; Motion to Dismiss), Plaintiff's Motion for Leave to Amend the Complaint (Doc. 65), and Plaintiff's Amended Motion for Leave to Amend the Complaint. (Doc. 81) (collectively "Motions to Amend"). The Motion to Dismiss was referred to the Honorable Thomas E. Morris, United States Magistrate Judge, for a Report and Recommendation regarding an appropriate resolution of the motion, (Doc. 80; 10/11/11 Order), and the Motions to Amend were referred to Judge Morris for disposition as a nondispositive matter. *See* Rule 72, Federal Rules of Civil Procedure (Rule(s)); Rule 6.01, Local Rules of the United States District Court for the Middle District of Florida ("Local Rules") On January 17, 2012, the Magistrate Judge entered a Report and Recommendation (Doc. 89; Report), recommending that Defendants' Motion to Dismiss be granted, and Plaintiff's two Motions to Amend be denied. Report at 23. Plaintiff M. Eugene Gibbs ("Gibbs"),[1] proceeding *pro se,* filed an objection to the Report (Doc. 92; Objection), and Defendants filed a response to that Objection. (Doc. 93: Response to Objection).[2]

### I. *Standard of Review*

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a *de novo* review of those findings. *Garvey v. Vaughn,* 993 F.2d 776, 779 n. 9 (11th Cir.1993); *see also* 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions *de novo,* even in the absence of an objection. *See Cooper–Houston v. S. Ry. Co.,* 37 F.3d 603, 604 (11th Cir.1994); *United States v. Rice,* No. 2:07–mc–8–FtM–29SPC, 2007 WL 1428615, at *1 (M.D.Fla. May 14, 2007).

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002);

---

**1.** As noted by the Magistrate Judge, Report at 1, Gibbs referred to himself as "M. Eugene Gibbs" in his original complaint (Doc. 1; Complaint), but has since referred to himself as "M. Eugene Gibbs–Squires" in subsequent filings. (*See* Doc. 27; 2d Am. Complaint). The Court will continue to refer to Plaintiff as "Gibbs" and declines to alter the style of the case.

**2.** Plaintiff subsequently filed what he termed "Plaintiff's Amended Reply to Report and Recommendation." (Doc. 94; Reply). The Court declines to consider this filing which it construes as unauthorized reply, filed without first obtaining leave of Court. *See* Rule 72; Local Rules 3.01(c), 6.02.

*see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex. rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. *Jackson v. Bell-South Telecomm.*, 372 F.3d 1250, 1262–63 (11th Cir.2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations omitted); *see also Jackson*, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *See Iqbal*, 129 S.Ct. at 1949, 1951. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). And, while *"[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), " 'this leniency does not give the court a license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.' " *Alford v. Consol. Gov't of Columbus, Ga.*, 438 Fed.Appx. 837, 839 (11th Cir.2011)[3] (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998) (internal citation omitted), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 706 (11th Cir.2010)).

" 'In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.' " *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir.2010) (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010)). Additionally, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judg-

---

**3.** "Although an unpublished opinion is not binding ..., it is persuasive authority.". *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir.2000) (per curiam); *see generally* Fed. R.App. P. 32.1; 11th. Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

ment. This is so, as long as such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.' " *Horne v. Potter*, 392 Fed.Appx. 800, 802 (11th Cir.2010) (quoting Fed.R.Evid. 201(b)). Moreover, "a court may take notice of another court's order ... for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994).[4]

## II. *Discussion*

### A. *Defendants' Motion to Dismiss*

### 1. *Count I: FECA Disability Benefits*

Count I of Gibbs's Second Amended Complaint is entitled "5 U.S.C. §§ 8123(d) & 5596."[5] In this count, Gibbs focuses on issues related to his claim for disability benefits, and seeks an "injunction" and $400,000 in interest. Complaint ¶¶ 10–19; *see also id.* ¶¶ 2, 7. In his general allegations, Gibbs, a former federal employee, alleges that his "disability claim is administered at the Department of Labor [DOL] field office located in Jacksonville, Flori-

da," and that "Defendants are sued ... to recover disability benefits Plaintiff loss [sic] as a direct result of improper actions taken against Plaintiff: including but not limited to retaliation against Plaintiff for demanding his legal rights under 5 U.S.C. §§ 8123(d) and 5596." *Id.* at ¶¶ 2, 7. Though somewhat garbled, Gibbs's Count I allegations refer to the DOL's mistaken suspension of his disability benefits in 1996 due to Gibbs's failure to attend a medical examination "with a doctor [sic] did not exist." *Id.* ¶¶ 10, 13. Gibbs alleges that the DOL "awarded payment for the period of March 31, 1996 to April 30, 2002 = $174,815.17" to correct the error. *Id.* ¶¶ 13, 14. Gibbs then alleges that the DOL demanded "repayment of $34,000 ... in retaliation for Plaintiff not dropping his claim for interest—about $400,000", apparently on the disability claim awarded for the 1996 through 2002 period. *Id.* ¶ 15. The balance of Gibbs's Count I allegations takes issue with the DOL telephonic hearing process, and the DOL's monthly deduction of disability payments, beginning in March 2010. *Id.* ¶¶ 16–18. Gibbs seeks an "injunction" to "prevent ... the illegal taking of Plaintiff's disability benefits," and $400,000, presumably referring to his

---

4. In his Objection to the Report, Plaintiff disputes the applicability of prior court decisions, relied upon by the Magistrate Judge. Objection at 1, 5. While the Magistrate Judge attempted to sort through portions of Gibbs's extensive and convoluted litigation history in an effort to make sense of Gibbs's nearly indecipherable claims here, the undersigned focuses narrowly upon the claims made in the Second Amended Complaint for purposes of addressing the Motion to Dismiss before it. Accordingly, the Court will adopt only those portions of the Report specified.

5. 5 U.S.C. § 8123(d), is a section found in the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.* It states that:

(d) If an employee refuses to or obstructs an [physical] examination, his right to compensation under this subchapter is suspended until the refusal or obstruction stops. Compensation is not payable while a refusal or obstruction continues, and the period of refusal or obstruction is deducted from the period for which compensation is payable to the employee.

5 U.S.C. § 8123(d).

5 U.S.C. § 5596, is called the Back Pay Act. "The purpose of this statute is to put a [Government] employee who was the victim of an unjustified or unwarranted personnel action in the same position as he would have been in had the erroneous action not occurred." *Wells v. F.A.A.*, 755 F.2d 804, 807 (11th Cir. 1985).

"claim for interest-about $400,000." *Id.* ¶¶ 15, 19.

Defendants seek to dismiss Count I of the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), arguing that Gibbs is challenging the DOL's determination and processing, pursuant to the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101, *et seq.,* of his disability benefit claim. Defendants contend that the Court does not have jurisdiction to review the DOL's decision. Motion at 10–11, 13–17. In support of this contention, Defendants have submitted an extensive collection of documents related to Gibbs's FECA disability claim, dating back to 1987.

 Rule 12(b)(1) provides for the dismissal of a case when the court determines it lacks subject matter jurisdiction over the action. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously ensure that jurisdiction exists over a case." *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir.2001). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be founded on either a "facial" or "factual" challenge to the court's jurisdiction:

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

*Morrison v. Amway Corp.,* 323 F.3d 920, 924 n. 5 (11th Cir.2003) (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir. 1990)) (internal citations omitted). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States,* 285 F.3d 947, 951 (11th Cir.2002). Defendants mount a factual attack to the existence of subject matter jurisdiction as to Count I of the Second Amended Complaint. Accordingly, the Court may consider its subject matter in fact, as established by the Defendants' submissions, and if it determines that it lacks subject matter jurisdiction, the Amended Complaint will be dismissed as the Court "is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999).

Gibbs's lengthy FECA disability file includes a July 17, 2009 letter from the DOL Employment Standards Administration, Office of Workers' Compensation Programs (OWCP) to Gibbs, informing Gibbs that it had determined that he had been overpaid disability payments in the amount of $32,078.57 based on DOL's finding that he had "misrepresented and concealed business activity and income" in 1995. (Doc. 27–4 at 49; 07/17/09 OWCP Letter (Rios Aff. Ex. 19)). The letter advised that Gibbs could request a "pre-recoupment hearing before a representative of the Branch of Hearings and Review." *Id.* On August 14, 2009, Gibbs requested a hearing, (Doc. 27–4 at 56; 08/14/09 Gibbs Request (Rios Aff. Ex. 20)), and on October 1, 2009, the OWCP informed Gibbs "an informal hearing" would be held by telephone before an OWCP Hearing Representative on November 12, 2009. Gibbs was provided a toll-free number to call at the designated time. (Doc. 27–5 at 2; 10/01/09 OWCP Notice of Hearing (Rios Aff. Ex. 21)). The OWCP Hearing Representative determined that Gibbs had caused an overpayment in his FECA disability payments of $32,078.57, and that the overpayment would be recouped from his continuing FECA disability payments

at a rate of $1,400 per month. The Hearing Officer indicated that Gibbs did not attend the telephonic hearing, nor did he offer any explanation for not doing so. (Doc. 27–5 at 27; 02/01/10 OWCP Decision (Rios Aff. Ex. 25)). Gibbs appealed the OWCP Decision to the DOL Employees' Compensation Appeals Board (ECAB), (Doc. 27–5 at 34; ECAB Appeal (Rios Aff. Ex. 26)), and on March 23, 2011, the ECAB affirmed the OWCP Decision. (Doc. 27–1 at 7; Rios Aff. ¶ 29).

As recently noted by the Eleventh Circuit:

The FECA is a comprehensive and exclusive workers' compensation scheme for federal civilian employees who are injured or killed while performing their work duties. *Noble v. United States,* 216 F.3d 1229, 1234 (11th Cir.2000). Central to the FECA's statutory scheme is the Secretary of Labor (the "Secretary"), who has the authority to administer and decide all questions arising under the FECA. *Id.* The Secretary has delegated its authority to oversee the FECA's administration and implementation to the Director of the OWCP. *Id.* The Secretary retains the ability to review an award for or against payment of benefits at any time on his own motion or by application. 5 U.S.C. § 8128(a).

However, the FECA bars judicial review of the Secretary's decision allowing or denying an award of benefits. 5 U.S.C. § 8128(b). The Supreme Court has noted that the "FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage." *Sw. Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991) (citation omitted). Moreover, "[c]onclusions of law and fact made by the Secretary or the [Employees' Compensation Appeals Board] are also immune from judicial review." *Woodruff v. U.S. Dep't of Labor,* 954 F.2d 634, 637 (11th Cir.1992) (citation omitted). However, there are two instances in which a federal court may exercise jurisdiction over a final decision of the Secretary under the FECA, namely, when (1) a clear statutory mandate or prohibition has been violated, or (2) there is a colorable constitutional claim. *Id.* at 639–40.

*Gilmore v. Dir., U.S. Dep't of Labor, Office of Workers Comp.,* 455 Fed.Appx. 934, 936 (11th Cir.2012).

◼ Gibbs's claim in Count I falls squarely within the category of claims challenging FECA benefits decisions that are specifically foreclosed by the FECA statutory scheme and the United States' sovereign immunity. Gibbs fails to allege any constitutional or statutory basis for bringing his claim within the narrow exception to the FECA's prohibition of judicial review. First, Gibbs fails to adequately allege how the scheduled recoupment hearing before the Branch of Hearings and Review which was set to be held by telephone, *see* 2d Am. Complaint ¶ 17, violates any clear statutory mandate or the Constitution, presumably the right to procedural due process. Indeed, such a telephone hearing is contemplated by the OWCP regulations, and thus, Gibbs has failed to allege how the offer of a telephonic recoupment hearing violates a clear statutory mandate. *See* 20 C.F.R. § 10.615 (2011) ("At the discretion of the hearing representative, an oral hearing may be conducted by telephone, teleconference, video conference or other electronic means."); *see also* 20 C.F.R. § 10.615 (2009). Nor does Gibbs' complaint about the offer of a telephone hearing transform this garden variety claim for benefits into one raising constitutional procedural due process concerns. "[T]he Supreme Court

has held that '[t]he fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *Gilmore*, 455 Fed. Appx. at 937 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted)); *see Sanford v. Comm'r of IRS*, 283 Fed.Appx. 780, 783 (11th Cir.2008) (where statute did not specify that hearing must take place in person, applicable regulations specifically provided that a face-to-face hearing is not required, and tax petitioner failed to state any reason why a telephone conference was insufficient, scheduled telephone hearing did not violate petitioner's due process rights); *compare Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir.1985) (plaintiff may have a cognizable due process claim given the Secretary's failure to provide a hearing after suspension of benefits, despite plaintiff's request for one). Gibbs

has not alleged a deprivation of the opportunity to notice or to a hearing; indeed, his allegations clearly set forth that he was accorded both.2d Am. Complaint ¶¶ 16–17 ("Plaintiff was provided an opportunity to appeal ..."). For the same reasons, Gibbs's allegation that the DOL's recoupment decision was "in retaliation" for Gibbs's claim of interest on disability benefits withheld and then paid back, 2d Am. Complaint ¶ 15, also fails to state a claim beyond challenging the DOL FECA disability determination, as he asserts no statutory or constitutional violation.[6] Finally, neither Gibbs's citation to the Back Pay Act, 5 U.S.C. § 5596 nor his repeated reference to "personnel decision[s]," 2d Am. Complaint ¶¶ 12, 14, transform his FECA disability claim into a Back Pay Act claim for purposes of any entitlement to interest on the retroactive payment of his FECA disability benefits.[7]

6. Indeed, the fact that Gibbs has failed to identify any statute or constitutional provision that waives the United States' sovereign immunity from payment of interest on retroactive FECA disability payments significantly undermines his allegation of retaliation. *See United States v. Aisenberg*, 358 F.3d 1327 (11th Cir.2004) ("[i]t is well established that 'interest cannot be recovered in a suit against the [United States] Government in the absence of an express waiver of sovereign immunity from an award of interest' " (citation omitted)); *see also Proctor v. United States*, 95 Fed.Cl. 437, 440–41 (2010) (FECA does not expressly waive sovereign immunity to provide for the award of interest); *Matter of Moody*, 42 E.C.A.B. 364, 370–71, 1991 WL 639441 (E.C.A.B. Feb. 5, 1991) (DOL Employees' Compensation Appeals Board states that there is no provision in the FECA for payment of interest on retroactive awards of compensation).

7. Section 5596(b)(1) of the Back Pay Act provides that:

An employee of an agency, who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a

grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee ... is entitled, on correction of the personnel action, to receive for the *period for which the personnel action* was in effect ... an amount equal to all or any part of the pay ... and reasonable attorney fees.

5 U.S.C. § 5596(b)(1).

"The Back Pay Act endeavors 'to make workers whole who [have] suffered on account of unfair labor practices.' " *Estate of Schultz v. Potter*, 349 Fed.Appx. 712, 718 (3d Cir.2009). "FECA/OWPC wage-replacement payments, a form of workers' compensation, arise from a separate statutory scheme—FECA—and do not fall into either the 'outside earnings' or 'erroneous payments' categories of the Back Pay Act.... [T]he FECA/OWPC payments were not received ... 'as a result of the unjustified or unwarranted personnel action,' but as compensation for [a] work-related injury." *Schultz*, 349 Fed.Appx. at 718 (citation omitted).

For the foregoing reasons, the Court will adopt the Report's recommended finding that this Court lacks subject matter jurisdiction over Count I of the Second Amended Complaint. *See* Report at 12–14.[8] Accordingly, the Motion to Dismiss is due to be granted as to this claim and Count I dismissed.

### 2. *Count II: False Claims Act*

Count II of the Second Amended Complaint is entitled: "Whistleblower [False Claims Act]." 2d Am. Complaint at 5. In this claim, Gibbs alleges that "[o]n or about February 1986," he became a "Whistle blower," " 'Blowing the Whistle' " on the "Baltimore DCASMA" (Defense Contract Administration Services Management Area) for its alleged misuse of employee travel funds. *Id.* ¶¶ 20, 21 ("recovering travel funds for employees"). Gibbs alleges that he was "elevated to a position designed to secure Plaintiff a promotion," but was removed from that position two hours later. *Id.* ¶ 21.a. He asserts that after filing a complaint, he was offered another position, but was then "informed by his supervisor the offer was made to place Plaintiff in a position where Plaintiff could be charged with misconduct and/or be arrested." *Id.* ¶ 22. Gibbs contends that the "illegal retaliation against Plaintiff" by "Plaintiff's agency" has "cost the American taxpayers $1 Trillion over the past 25 years!" *Id.* ¶ 23. Gibbs seeks reinstatement to his position "at the Defense Logistics Agency (Department of Defense)," and damages "not less than $300 Billion." *Id.* ¶ 23.a.

The purpose of the False Claims Act (FCA) is to encourage private individuals, who are aware of fraud being perpetrated against the Government, to bring such information forward, while preventing opportunistic suits by individuals who hear of fraud through public sources but played no part in exposing it. *Klusmeier v. Bell Constructors, Inc.*, No. 10–15657, 2012 WL 555736, at *2 (11th Cir. Feb. 21, 2012) (citing *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 (11th Cir.1994)); *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1496–97 (11th Cir.1991). The FCA empowers private persons ("relators") to bring suit on their own and on the government's behalf, "with the promise of a share of the damages recovered serving as incentive for such private enforcers." *NEC Corp.* at 1497; *see* 31 U.S.C. § 3730(b)(1).

8. The Court declines to adopt those portions of the Report which seemingly recommend that Gibbs's Second Amended Complaint should be dismissed for improper venue. Report at 14–15, 16, 18, 20. While the basis for venue in this Court is indeed, questionable, Defendants did not raise lack of venue as a basis for dismissal in their Motion, noting only that former DOL employee Linda DeCarlo, who is mentioned in the Second Amended Complaint, never worked in Jacksonville, Florida. Motion at 1; *see also* Objection at 6.

"[V]enue is a personal privilege to be raised by motion and the privilege may be waived." *Harris Corp. v. Nat'l Iranian Radio and Television*, 691 F.2d 1344, 1349 (11th Cir.1982). Indeed, Rule 12(h)(1) provides that some defenses, including improper venue, are waived by failing to raise them in the initial Rule 12 motion. *Aero Techs., LLC v. Lockton Cos. Int'l, Ltd.*, 406 Fed.Appx. 440, 441 (11th Cir. 2010) (citing Rule 12(h)(1) and 12(b)(2)-(5)); *see also Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir.1988) (improper venue defense is waived when a defendant files a responsive pleading or Rule 12 motion failing to assert it). "In the absence of a waiver, a district court may raise on its own motion an issue of defective venue . . .; but the court may not dismiss without first giving the parties an opportunity to present their views on the issue." *Lipofsky*, 861 F.2d at 1258.

Here, for whatever reason, Defendants have chosen not to raise the issue of venue in their motion, and the Court declines to do so in the face of this apparent waiver.

Gibbs apparently seeks to state a claim under the anti-retaliation provision of the FCA. 31 U.S.C. § 3730(h).[9]

Under this section, an employee has a retaliation claim against [his] employer if [he] suffers adverse job consequences as a result of [his] "efforts to stop 1 or more violations" of the False Claims Act. 31 U.S.C. § 3730(h). Protected conduct is conduct that "furthered an action filed or to be filed" under the False Claims Act. *Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d 176, 187 (3d Cir.2001) (internal quotations omitted). Thus, "[i]f an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." *United States ex rel. Sanchez v. Lymphatx, Inc.,* 596 F.3d 1300, 1304 (11th Cir.2010).

*United States ex rel. Gatsiopoulos v. Kaplan Career Inst.,* No. 09–21720–CIV, 2010 WL 5392668, at *6 (S.D.Fla. Dec. 22, 2010).

▮▮▮▮ While a federal government employee, in certain circumstances, may file an FCA *qui tam* action, *NEC Corp.,* 931 F.2d at 1501–02, 1504; *see also United States ex rel. Holmes v. Consumer Ins. Group,* 318 F.3d 1199, 1209–1214 (10th Cir. 2003), a federal employee, stands on different footing than a privately employed citizen when it comes to an FCA retaliation claim. "The cornerstone of the [Civil Service Reform Act's (CSRA)] protections is the aggrieved employee's right to seek review of adverse agency action in the Merit Systems Protection Board (MSPB). 5 U.S.C. § 7701." *LeBlanc v. United States,* 50 F.3d 1025, 1029 (Fed.Cir.1995). Because Gibbs was employed as a civilian employee by the Department of Defense, the CRSA applies to disputes arising out of his employment. *See* 5 U.S.C. § 2302(a)(2)(B); *Steele v. United States,* 19 F.3d 531, 532 (10th Cir.1994). The CSRA was enacted to provide a "comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena,* 60 F.3d 346, 347 (7th Cir.1995) (citing *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)). Nothing about the FCA's anti-retaliation provision changes that preemption; the civil remedy provided in the FCA's anti-retaliation provision, § 3730(h), does not apply to federal employees, whose exclusive remedy is under the CSRA. *See Rockefeller v. Abraham,* 23 Fed.Appx. 893, 896 (10th Cir. 2001); *LeBlanc,* 50 F.3d at 1029–1030; *Humphrey v. Napolitano,* No. 11–20651–CIV, 2011 WL 4527451, at *5 (S.D.Fla. Sept. 28, 2011) (CSRA provides the exclusive remedy for federal employees who suffer retaliation as a result of whistleblowing); *see also Ferry v. Hayden,* 954 F.2d 658, 661 (11th Cir.1992) ("[t]he CSRA specifically lists reprisal for 'whistleblowing' as a 'prohibited personnel practice' ") (citing 5 U.S.C. § 2302(b)(8)(A)). Gibbs's allegation that he was transferred to another position in retaliation for his whistle-

9. Congress amended the FCA in 1986 to add Section 3730(h) creating a cause of action against employers who retaliate against *qui tam* relators. *Graham Cnty. Soil and Water Conservation Dist. v. United States ex rel. Wilson,* — U.S. —, 130 S.Ct. 1396, 1415, 176 L.Ed.2d 225 (2010); *see* Pub.L. 99–562, §§ 3, 4, Oct. 27, 1986, 100 Stat. 3154, 3157. The Court will assume, for purposes of considering Defendants' Motion to Dismiss, that the conduct about which Gibbs complains in Count II, occurred after the enactment and effective date of Section 3730(h). Congress's 2009 amendment to Section 3730(h) only applies to conduct on or after May 20, 2009. *See United States ex rel. Sanchez v. Lymphatx, Inc.,* 596 F.3d 1300, 1303 n. 5 (11th Cir. 2010).

blowing activities arises out of an allegedly adverse employment decision made by his supervisors, and thus, falls squarely with the scope of the CSRA. The remedies set forth in the CSRA are the exclusive remedies for evaluating adverse personnel actions against federal employees. Thus, it appears that the Court lacks subject matter jurisdiction to consider Gibbs' "retaliation" claim.[10]

▮▮▮▮▮ Notwithstanding the Court's conclusion that it lacks subject matter jurisdiction, Gibbs's Count II claim is barred because he failed to plead that he properly exhausted the required administrative remedies, by not timely filing an appeal of his personnel transfer with the MSPB. An employee's failure to exhaust his adminis-

trative remedies under the CSRA precludes judicial review of his allegations of improper agency personnel action. *Ferry,* 954 F.2d at 661. The Court finds that Gibbs has failed to allege or establish that he failed to properly exhaust his administrative remedies, further precluding federal court jurisdiction. *See Stevens v. United States,* Civ. A No. 94–D–1369–E, 1995 WL 577682, at *4 (M.D.Ala. Aug. 24, 1995).[11]

For the foregoing reasons, the Court determines that Count II of Gibbs's Second Amended Complaint is due to be dismissed.

### 3. *Count III: Negligence*

Count III of Gibbs's Second Amended Complaint is labeled as one for "Negli-

---

**10.** In so holding, the Court does not in any way suggest that Gibbs stated a claim that he was engaged in "protected conduct," or that he could have brought a False Claims Act *qui tam* action against the United States regarding the alleged use of employee travel funds.

**11.** Because the Court has determined that it does not have subject matter jurisdiction over Count II of the Second Amended Complaint, it need not reach the issue of whether Gibbs's claim-which appears to be based upon conduct that occurred 25 years ago, *see* 2d Am. Complaint ¶¶ 20–23, was timely filed. The Defendants did not raise statute of limitations as a basis for dismissal of Count II. Motion at 19–20. Nevertheless, the Magistrate Judge determined Count II was time-barred under the FCA's statute of limitations. Report at 16 (citing 31 U.S.C. § 3731(b)). The Court specifically declines to adopt this portion of the Report.

The Court notes that Section 3731(b) does not apply to an FCA retaliation claim. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 422, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005) (noting that the six-year statute of limitations in the FCA found at 31 U.S.C. § 3731(b) did not govern FCA civil actions for retaliation brought pursuant to § 3730(h)); *Riddle v. Dyncorp Int'l Inc.,* 666 F.3d 940, 941–42 (5th Cir.2012). However, prior to 2010, the FCA contained no statute of limitations for a

§ 3730(h) retaliation claim. In the absence of an express limitations period, the Supreme Court directed that the "most closely analogous state statute of limitations" should apply to FCA retaliation claims. *Graham Cnty.,* 545 U.S. at 422, 125 S.Ct. 2444; *see also Foster v. Savannah Commc'n,* 140 Fed.Appx. 905, 908 (11th Cir.2005) (the most closely analogous state limitations period, rather than the six-year statute of limitations in the FCA applies to an FCA retaliation claim) (citing *Graham Cnty.,* 545 U.S. at 422, 125 S.Ct. 2444 (2005)). In 2010, Congress amended § 3730(h) to provide an express three-year statute of limitations for FCA retaliation claims. *See* 31 U.S.C. § 3730(h)(3); *see Lindsay v. Tech. Coll. Sys. of Ga.,* No. 1:09–CV–2133–JEC, 2011 WL 1157456, at *6 n. 6 (N.D.Ga. March 29, 2011) (citing Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111–203, 124 Stat. 1376 (July 21, 2010)). It is not clear, however, whether the 2010 amendment is retroactive to conduct pre-dating 2010. *Id.; see also United States ex rel. Berglund v. Boeing Co.,* 835 F.Supp.2d 1020, 1032–34 (D.Or.2011); *United States ex rel. Dyer v. Raytheon Co.,* No. 08–10341–DPW, 2011 WL 3294489, at *12 (D.Mass. July 29, 2011); *Saunders v. Dist. of Columbia,* 789 F.Supp.2d 48, 51–54 (D.D.C. June 6, 2011).

For the foregoing reasons, the Court does not adopt the FCA statute of limitations portion of the Report. Report at 16.

gence." The allegations are rather garbled, asserting that government officials representing the "Smithsonian Institution," who opposed him in a 1996 lawsuit brought in New York "to recover more than 3,000 works of art by the late African American Artist William H. Johnson" conspired to cause Gibbs harm. 2d Am. Complaint ¶¶ 24–25. Gibbs alleges that one of the officials, Assistant United States Attorney Neil Corwin, "caused Plaintiff's medical records to be stolen from the State of Connecticut for the purpose of using Plaintiff's medical information to their advantage: to cause Plaintiff's mental breakdown and/or worst [sic]," and provided the records to the Attorney General of South Carolina "in an attempt to have Plaintiff disbarred." *Id.* ¶¶ 26–27.[12] Gibbs alleges that in 1995, he sought information regarding whether his return to work would disrupt his disability benefits, and that in 1998, the Government "began an investigation of Plaintiff concerning fraud. That Plaintiff was working while receiving disability benefits." *Id.* ¶¶ 28, 29. Gibbs alleges that "The Secretary breached her duty to Plaintiff: as a Whistleblower the Secretary had a duty to protect Plaintiff," and that as a result of this "breach of duty," Gibbs's work activities were investigated causing Gibbs to suffer "a psychological breakdown, being arrested, imprisoned and tortured," and preventing him from recovering the "stolen art." *Id.* ¶ 32. Gibbs seeks damages of "not less than $10 billion." *Id.* ¶ 33. While not entirely clear, it appears that Gibbs alleges that the Secretary of the DOL owed a duty to protect Gibbs, and that permitting DOL employees to investigate whether he was improperly receiving FECA disability benefits while working, was a breach of that alleged "duty," causing him damages.

What is clear, however, is that he seeks money damages from the federal government based on his claim of "negligence."

It is well established that the United States is immune from suit unless it has consented to be sued, and its consent to be sued defines the terms and conditions upon which it may be sued. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The FTCA provides that the United States may be held liable for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. § 1346(b)(1); *see also Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir.2008). Thus, the "FTCA is a specific, congressional exception" to the United States' sovereign immunity. *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir.1994). As such, the waiver of sovereign immunity permitted under the FTCA "must be scrupulously observed, and not expanded, by the courts." *Id.*

The FTCA's waiver of sovereign immunity is a "limited waiver of the United States' sovereign immunity for tort claims" allowing "certain parties" to sue the government "under certain circumstances." *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir.2006) (internal quotations omitted). As such, before instituting an action under the FTCA, a claimant must first exhaust the required administrative remedies. *McNeil v. United States*, 508 U.S. 106, 107, 113, 113 S.Ct.

12. The allegations of the Second Amended Complaint imply that Gibbs was once a practicing attorney, and a member of the Bar of South Carolina. *See* 2d Am. Complaint ¶¶ 27, 36.

1980, 124 L.Ed.2d 21 (1993); *see also Turner*, 514 F.3d at 1200. If a party files suit in a district court before filing an administrative claim and exhausting the statutory administrative remedies, the suit will be premature and the district court will lack subject matter jurisdiction over the action. *See Turner*, 514 F.3d at 1200 (quoting *McNeil*, 508 U.S. at 113, 113 S.Ct. 1980 ("[t]he FTCA bars claimants from bringing suits in federal court until they have exhausted their administrative remedies")). Thus, before a federal court can exercise jurisdiction over an FTCA suit, the plaintiff must first file a timely administrative claim with the appropriate agency, and then allow that claim to be denied, or for six months to elapse. *Suarez*, 22 F.3d at 1065 (citing 28 U.S.C. § 2675(a)). "[T]he failure to adequately allege exhaustion in the complaint is grounds for dismissal for lack of subject matter jurisdiction." *Chapman v. U.S. Postal Serv.*, 442 Fed.Appx. 480, 485 (11th Cir.2011) (citing *Dalrymple*, 460 F.3d at 1324–26), *cert. denied*, —— U.S. ——, 132 S.Ct. 1624, 182 L.Ed.2d 194 (2012).

 Here, Gibbs has failed to allege that he filed a timely administrative claim. Moreover, nothing in his Second Ammended Complaint can remotely be construed as suggesting that he has exhausted his administrative remedies. As such, Count III of the Second Amended Complaint is due to be dismissed for lack of subject matter jurisdiction, for failure to exhaust the required administrative remedies.

#### 4. *Count IV—Conspiracy*

Gibbs's allegations, in Count IV, of a civil rights conspiracy pursuant to 42

U.S.C. § 1985, are incomprehensible. He asserts that "[a]ll acts committed against Plaintiff ... were designed to preserve the second class status of Black citizens, a class of which Plaintiff is an identifiable member," 2d Am. Complaint ¶ 35;[13] *see also id.* ¶ 38, and also that "[t]he Justice Department and/or F.B.I sought to protect high profile public Black figures who are 'controlled' F.B.I informants." *Id.* ¶ 36. In this regard, Gibbs makes fantastical and unsupported, extreme allegations regarding "Rep. John Lewis," "William 'Bill' Cosby," and "Julian Bond," alleging they are involved in the "art theft" of "William H. Johnson [sic] artwork," and other crimes. *Id.* ¶¶ 34, 36. Gibbs then references his FECA disability payments (over which, as set forth above, this Court does not have subject matter jurisdiction), alleging that "AUSA Corwin combined and conspired with Investigator Ryan and Ms. DeCarlo for the purpose of denying Plaintiff his disability benefits awarded by the Secretary." *Id.* ¶ 37. Gibbs then concludes his allegations with an unnecessary (and inappropriate) racial epithet as summing up the "essence of this conspiracy." *Id.* ¶ 38.a. This claim is patently frivolous. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir.2011).

 Upon review of the rather confusing allegations of the Second Amended Complaint, it appears that Gibbs is attempting to proceed under 42 U.S.C. § 1985(3), which provides a remedy for conspiracy to interfere with civil rights. 42 U.S.C. § 1985(3).[14] To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriv-

---

**13.** Count IV contains two paragraphs numbered "35." This citation is to the first paragraph "35."

**14.** "Section 1985 covers conspiracies to interfere with civil rights." *Kivisto v. Miller, Can-*

*field, Paddock & Stone, PLC*, 413 Fed.Appx. 136, 139 (11th Cir.2011) (citing 42 U.S.C. § 1985), *cert. denied*, —— U.S. ——, 132 S.Ct. 577, 181 L.Ed.2d 441 (2011).

ing a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) resulting in an injury to person or property, or a deprivation of any right or privilege of a citizen of the United States." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed.Appx. 136, 140 (11th Cir.2011) (citing *Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir.1996)), *cert. denied,* —— U.S. ——, 132 S.Ct. 577, 181 L.Ed.2d 441 (2011). The 11th Circuit Court of Appeals has noted that "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir.1985). Additionally, to satisfy the second element, the plaintiff must allege that the conspirators were motivated by "racial, or otherwise class-based, invidiously discriminatory intent." *Almon v. Sandlin*, 603 F.2d 503, 505 (5th Cir. 1979); [15] *see also Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 628 (11th Cir. 1992). Gibbs makes no factual allegations which would support an inference that Defendants conspired or agreed among themselves or with someone or failed to stop others from conspiring against him. *See Mickens v. Tenth Judicial Circuit*, 181 Fed.Appx. 865, 876 (11th Cir.2006) (be-

cause plaintiff failed to allege with specificity an agreement between defendants to deprive plaintiffs of their rights, § 1985(3) claim was due to be dismissed); *Montford v. Moreno*, No. 04–12909, 2005 WL 1369563, at *7 (11th Cir. June 9, 2005) (complaint alleged only conclusory allegations of conspiracy and failed to allege any evidence that defendants reached an understanding to violate plaintiff's rights, warranting dismissal of § 1985(3) claim). Additionally, Gibbs does not allege any facts whatsoever suggesting that any conduct involving the William H. Johnson artwork, or events in Gibbs's life, including his FECA disability claim, disbarment, arrest and incarceration, were in anyway motivated by racial animus. As such, the allegations of Count IV of the Second Amended Complaint are insufficient to state a plausible claim for relief.[16]

### 5. *Count V: RICO*

In Count V of the Second Amended Complaint, Gibbs alleges that the "Defendants, combined and conspired to profit from the stolen Johnson artwork," and "[i]n taking steps in furtherance of said conspiracy, injured Plaintiff in his person and property, to wit: Plaintiff was prevented from litigating ..., Plaintiff was disbarred ..., Plaintiff was forced to close his law firm ..., [and] Plaintiff's health was destroyed ...." 2d Am. Complaint

---

**15.** In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**16.** Gibbs also titles Count IV with a citation to 42 U.S.C. § 1986. The body of Count IV, however, makes no mention of the statute. "Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about

to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so.' " *Park v. City of Atlanta*, 120 F.3d 1157, 1159 (11th Cir.1997) (quoting 42 U.S.C. § 1986). "Section 1986 claims are therefore derivative of § 1985 violations." *Id.* at 1159–60. Because Gibbs has not alleged sufficient facts to support an inference that a § 1985 violation occurred, his § 1986 claim, which is dependent on his § 1985 claim, is due to be dismissed.

¶ 36.[17] Additionally, Gibbs alleges that "[t]he Smithsonian Institution knowingly violated the copyright as to the Johnson artwork," taking possession of the "stolen Black art" worth more than "$1.6 Billion." *Id.* ¶ 37. He refers again to "the wrongful conspiracy, racketeering, and other illegal acts caused by the Justice Department," and to " '[t]he year and a half torture of Plaintiff,' " an apparent reference to an earlier criminal conviction and imprisonment. *Id.* ¶ 41. *See United States v. Gibbs,* 185 Fed.Appx. 258 (4th Cir.2006), *cert. denied,* 549 U.S. 1117, 127 S.Ct. 1005, 166 L.Ed.2d 712 (2007); *Gibbs v. United States,* Civil Action Nos. PJM–09–856, PJM–03–3550, Criminal Action No. PJM–03–400, 2009 WL 1097898 (D.Md. April 22, 2009).[18] Gibbs seeks an injunction "restraining the defendants from their illegal acts," an "order of mandamus" directing the United States and state attorneys general "to investigate the criminal acts of defendants", and damages caused by Defendants, which he contends total "not less than $100 Billion." 2d Am. Complaint ¶¶ 38, 39, 41, 42.

▆▆▆▆ Gibbs paints his claim, which is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), with a broad brush.[19] Nevertheless, to state a RICO claim pursuant to 18 U.S.C. § 1964, Gibbs must allege three essential elements: (1) violation of § 1962; (2) injury to business or property; and (3) that the violation caused the injury. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991) (citing 18 U.S.C. § 1964(c)); *see also Se. Laborers Health and Welfare Fund v. Bayer Corp.,* 444 Fed.Appx. 401, 409 (11th Cir.2011). In order to adequately plead the first element, a violation of § 1962, a plaintiff must allege " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Kivisto,* 413 Fed.Appx. at 138 (quoting *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir.2006)). "In addition, plaintiffs in a civil RICO action must also satisfy the requirements of § 1964(c), which requires (1) a showing of an injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Id.* (quoting 18 U.S.C. § 1964(c)); *see also Ironworkers Local Union 68 v. AstraZeneca Pharm., LP,* 634 F.3d 1352, 1361 (11th Cir.2011). "Racketeering activity" is defined by § 1961 to include specified predicate acts. *See* 18 U.S.C. § 1961(1). "In order to prove a pattern of racketeering activity in a civil or criminal RICO case, a Plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290–91 (11th Cir.2010). " 'A party alleging a RICO violation may dem-

---

**17.** Gibbs's Second Amended Complaint repeats the use of paragraph numbers 36, 37, and 38 in paragraphs found in Counts IV and V of the Second Amended Complaint. The respective paragraphs 36–38 referred to in this discussion of RICO are those found in Count V.

**18.** Gibbs also incorporates all of the remaining allegations of the Second Amended Complaint, including the preceding four claims, into Count V. *See* 2d Am. Complaint ¶ 40. Not only does this create an impermissible shotgun pleading, *see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305

F.3d 1293, 1295–96 (11th Cir.2002), which the Court has previously advised is not permitted, (*see* Doc. 5; 02/07/11 Order), but also renders the allegations in Count V even more confusing.

**19.** He entitles it as one brought pursuant to "42 U.S.C. § 1964," an apparent reference to 18 U.S.C. § 1964, which he cites later. *See id.* ¶ 41.a. He also cites to 18 U.S.C. §§ 1961, and 1962, referring to "the wrongful conspiracy, racketeering, and other illegal acts caused by the Justice Department." *Id.* ¶ 41.

onstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.'" *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)).

■■■■ "Section 1962(d) of the RICO statutes makes it illegal for anyone to *conspire* to violate one of the substantive provisions of RICO, including § 1962(c)." *Am. Dental Ass'n*, 605 F.3d at 1293 (citing 18 U.S.C. § 1962(d)) (emphasis added). "'A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts.'" *Id.* (citations omitted). "A plaintiff need not offer direct evidence of a RICO agreement; the existence of a conspiracy 'may be inferred from the conduct of the participants.'" *Id.* (citation omitted). Additionally, "'[t]o be guilty of conspiracy, ... parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law.'" *Kivisto*, 413 Fed.Appx. at 139 (quoting *Jackson*, 372 F.3d at 1269).

■■■ The Court construes the allegations of Count V of the Second Amended Complaint, as attempting to assert a RICO conspiracy claim. However, Count V does not plausibly, under *Twombly*, allege a pattern of racketeering activity arising out of the commission of two or more specified predicate acts. Indeed, Gibbs has failed to identify any § 1961 predicate acts that constitute "racketeering activity," much less a "pattern of racketeering activity.[20] Moreover, Gibbs has not 'allege[d] facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1).'" *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir.2004).

Nor do the allegations in Count V (or the rest of the Second Amended Complaint) support an inference of an agreement by Defendants to an overall objective of a conspiracy, or an agreement to commit two predicate acts. *See Am. Dental Ass'n*, 605 F.3d at 1293.[21] Gibbs's conclusory allegations of "conspiracy", *see* 2d Am. Complaint ¶¶ 7, 36, 39, 41, are set aside, as instructed in *Iqbal*, as these allegations are no more than "'formulaic recitations' of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient." *Am. Dental Ass'n*, 605 F.3d at 1294 (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955; *Iqbal*, 129 S.Ct. at 1950–51). All that remains are Gibbs's allegations that the Smithsonian Institute violated copyright laws, and that Gibbs suffered a series of damages from events in his life. At best, these allegations address so-called "parallel conduct." Gibbs makes no allegation, nor can one be inferred, that the Defendants, or any of the persons mentioned in Count V, agreed with each other to bring these events to pass, as opposed to having engaged in "'parallel conduct

**20.** "Racketeering activity" does include violations of 18 U.S.C. §§ 2314 and 2315 ("relating to interstate transportation of stolen property"), *see* 18 U.S.C. § 1961(1), but Gibbs does not make any allegation that the Defendants engaged in such conduct. And, even if Count V were based upon predicate acts of mail or wire fraud, 18 U.S.C. §§ 1341, 1343, Count V would still be due to be dismissed, as it does not begin to allege with sufficient particularity any circumstances constituting fraud. *See Am. Dental Ass'n*, 605 F.3d at 1291–92.

**21.** Because Count V fails to state a RICO conspiracy claim under *Twombly* and *Iqbal's* plausibility standard, it is unnecessary to the dismissal of Count V to determine whether Count V states a substantive RICO claim. *See Am. Dental Ass'n*, 605 F.3d at 1296 n. 6.

that could just as well be independent action.'" *Am. Dental Ass'n,* 605 F.3d at 1294 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

■ "[A]llegations of parallel conduct, accompanied by nothing more than a bare assertion of conspiracy, do not plausibly suggest a conspiracy . . . ." *Am. Dental Ass'n,* 605 F.3d at 1294. This conclusion is especially true where, as here, there is an "'obvious alternative explanation' for each of the collective actions alleged that suggest lawful, independent conduct." *Id.* at 1295 (citing *Twombly,* 550 U.S. at 568, 127 S.Ct. 1955). Gibbs's unsuccessful art litigation, disbarment, and criminal conviction more conceivably all arose from separate, lawful and independent circumstances, and absent specific allegations, it is not plausible from Gibbs's allegations that these events were the product of a pattern of unlawful racketeering activity or a preceding agreement among Defendants. Thus, Gibbs has not alleged sufficient facts to establish the plausibility of an agreement among Defendants or other persons or entities to engage in any ongoing criminal conduct or enterprise. "Plaintiffs' allegations of Defendants' parallel conduct, absent a plausibly-alleged 'meeting of the minds,' fail to 'nudge[ ][his] claims across the line from conceivable to plausible.'" *Am. Dental Ass'n,* 605 F.3d at 1296 (quoting *Twombly,* 550 U.S. at 557, 570, 127 S.Ct. 1955). Accordingly, Count V alleging RICO conspiracy, is due to be dismissed.

### B. *Plaintiff's Motions to Amend Second Amended Complaint*

Gibbs filed his initial Complaint on January 25, 2011. The Court struck the Complaint *sua sponte* for being an impermissible shotgun pleading. (Doc. 5; 02/07/11 Order). In that Order, the Court provided Gibbs with citation to Rules 8 and 10, Federal Rules of Civil Procedure, and set forth some very basic pleading requirements. *Id.* Gibbs subsequently filed an Amended Complaint (Doc. 6), and the Second Amended Complaint. Currently pending are Gibbs's two motions for leave to amend the Second Amended Complaint, both of which were filed subsequent to Defendants' Motion to Dismiss. (*See* Docs. 65, 81; Motions to Amend). Gibbs has submitted two proposed complaints with his motions. (*See* Docs. 65-1, 81-1; Proposed Amended Complaints).

■ The Court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir.2004). "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'" *Galindo v. ARI Mut. Ins. Co.,* 203 F.3d 771, 777 n. 10 (11th Cir.2000) (citation omitted); *see also Hall,* 367 F.3d at 1263 (denying motion for leave to amend to file a second amended complaint).

■ The Court has previously provided Gibbs with the opportunity to amend his Complaint in order that he may present his claims in accordance with the pleading requirements of the law and his substantive claims. 02/07/11 Order. Gibbs's Second Amended Complaint is due to be dismissed, for the reasons set forth above. The Court has had the opportunity to review Gibbs's Proposed Amended Complaints, and makes the determination that they too would be subject to dismissal. The Court specifically adopts the analysis and recommendation of the Magistrate Judge with respect to any further amendment, Report at 20–23, with the exception of the finding that the Rooker–Feldman

Doctrine applies.[22] Report at 22. Accordingly, Gibbs's pending Motions to Amend are due to be denied.

It is hereby

**ORDERED:**

1. The objections set forth in Plaintiff's Reply to Report and Recommendation (Doc. 92) are **OVERRULED.**

2. The Magistrate Judge's Report and Recommendation (Doc. 89) is **ADOPTED IN PART,** only to the extent specifically set forth in this Order.

3. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 27) is **GRANTED.**

4. Plaintiff's Second Amended Complaint (Doc. 11) is **DISMISSED,** as follows:

A. Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

B. Counts IV and V are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

4. Plaintiff's Motion for Leave to Amend the Complaint (Doc. 65) is **DENIED.**

5. Plaintiff's Amended Motion for Leave to Amend the Complaint (Doc. 81) is **DENIED.**

6. The Clerk is directed to terminate all remaining pending motions, and to close the file.

M. EUGENE GIBBS,[1] Plaintiff,

vs.

THE UNITED STATES OF AMERICA: Justice Department, Labor Department, Department of Defense, and DOES, 1–100, Defendants.

## *REPORT AND RECOMMENDATION*[2]

THOMAS E. MORRIS, United States Magistrate Judge.

 This case has been referred to the undersigned for issuance of a Report and Recommendation on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 27, Motion to Dismiss), filed April 1, 2011. Plaintiff has also filed two motions to amend the complaint (Docs. # 65 & # 81). For the reasons stated herein, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED** and the motions to amend the complaint be **DENIED.**

Plaintiff filed the initial complaint in this matter on January 25, 2011 (Doc. # 1). The Court struck the complaint based on a finding it was a "shotgun pleading"[3] and

---

**22.** "Under the *Rooker–Feldman* abstention doctrine, '[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision.'" *Velardo v. Fremont Inv. & Loan,* 298 Fed.Appx. 890, 892 (11th Cir.2008) (quoting *Dale v. Moore,* 121 F.3d 624, 626 (11th Cir. 1997)); *see generally Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

 The Court makes no determination on this record, one way or the other, whether the *Rooker–Feldman* doctrine applies.

**1.** Plaintiff refers to himself as M. Eugene Gibbs in the original complaint (Doc. # 1).

In other filings with the Court, Plaintiff has referred to himself as M. Eugene Gibbs–Squires (*see, e.g.,* Doc. # 11, Amended Complaint). Despite this change by Plaintiff, the Court declines to alter the style of the case.

**2.** Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to file a timely objection waives a party's right to a *de novo* review. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; Local Rule 6.02(a), United States District Court for the Middle District of Florida.

**3.** The Court also noted there were other questions concerning subject matter jurisdiction and venue (Doc. # 5).

allowed Plaintiff to file an amended complaint (*see* Doc. # 5, Court Order). Plaintiff filed an amended complaint (Doc. # 6) on February 14, 2011, and then filed another amended complaint (Doc. # 11) (which the Court will refer to as the "Second Amended Complaint") on February 18, 2011.[4]

The United States thereafter filed Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum in Support Thereof (Doc. # 27). Defendants request the Court dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The matter was then referred to the undersigned for a Report and Recommendation on the Motion to Dismiss (*see* Doc. # 80, Court Order). After the motion to dismiss was filed, Plaintiff filed a Motion for Leave to Amend Complaint (Doc. # 65, hereinafter referred to as the "Third Amended Complaint") (proposed complaint attached as Doc. # 65–1)[5] on August 16, 2011. On October 14, 2011, Plaintiff filed an Amended Motion for Leave to File an Amended Complaint (Doc. # 81, hereinafter referred to as the "Fourth Amended Complaint") (the proposed amended complaint is attached as Doc. # 81–1).[6]

For reasons described in detail below, the undersigned finds the Motion to Dismiss should be granted and the motions to amend the complaint should be denied. All of the proposed complaints contain similar deficiencies including lack of subject matter jurisdiction, lack of proper venue, continued shotgun pleadings and failure to state a plausible claim. In addition, many of the claims have been raised previously in cases dismissed in other jurisdictions.

## I. Factual Background

Plaintiff is a former New York City police officer. *See Gibbs v. New York City Police Dept.*, No. 88–cr–3638, 1992 WL 302910 (E.D.N.Y. Oct. 2, 1992).[7] At some point, he became a contract administrator for the Department of the Defense and, in March 1987, he filed for benefits under the Federal Employee Compensation Act ("FECA") based on mental anguish caused by his employment (Doc. # 27 at 3). In his initial complaint, Plaintiff alleged in 1986 he became a "whistle blower" against the agency for which he worked, and was subsequently retaliated against (Doc. # 1 at 5–6). He alleges he became distraught and was involuntarily committed to a mental institution in 1988. Plaintiff was awarded FECA benefits in 1989 (Doc. # 27 at 3).

Plaintiff apparently attended law school and was admitted to the South Carolina Bar Association on November 21, 1994 (*see*

---

4. The Court will consider the initial amended complaint (Doc. # 6) as *moot* based on the filing of the Second Amended Complaint (Doc. # 11) four days later.

5. The proposed amended complaint filed as Doc. # 65–1 has several deficiencies in numbering, including two Counts Five and Six. Count Four is out of sequence. The last three counts (Four, Five and Six) (which are after Count Eleven) contain attempted adoption of earlier paragraphs, the exact type of shotgun pleading the Court had stricken previously (*see* Doc. # 5).

6. The Court will consider the motion for leave to file Third Amended Complaint (Doc. # 65) as *moot* due to the amended motion for leave to file the Fourth Amended Complaint (Doc. # 81).

7. Gibbs refers to himself as a retired New York City police office in the matter of *Gibbs v. United States*, Civ. Action No. 8:09–cv–1779–PJM (D.Md. Jul. 6, 2009) (Doc. # 1, ¶ 5, Supplemented 28 U.S.C. §§ 2241 & 2255 Motion ... dated Jul. 6, 2009).

Doc. # 27–2 at 12). The Supreme Court of South Carolina ordered Plaintiff's status transferred to "incapacity inactive status" in April 2000. *In the Matter of M. Eugene Gibbs,* 340 S.C. 288, 531 S.E.2d 523 (S.C. 2000). Subsequently, Gibbs was disbarred based on several grounds, including the unauthorized practice of law in the Second Circuit Court of Appeals after the date he was placed on inactive status. *See In the Matter of M. Eugene Gibbs,* 349 S.C. 261, 562 S.E.2d 639 (S.C.2002).

In 1997, Plaintiff, acting as counsel for James H. Johnson, filed suit in the Southern District of New York against the Smithsonian Institution and the Michael Rosenfeld Gallery, Inc., alleging various claims for recovery or damages concerning art work painted by William H. Johnson, a South Carolina artist who died while confined in a mental institution in 1970. *See Johnson v. Smithsonian Inst.,* 9 F.Supp.2d 347 (S.D.N.Y.1998). After William H. Johnson was committed to the mental institution in 1947, the Supreme Court of New York appointed a committee to administer the assets of his estate, which included numerous paintings. *Id.* at 349. After about eight years, the committee sought to abandon the artwork which had been stored in a warehouse, indicating to the court that it had been unable to sell it and the art had no cash value. *Id.* at 350. The Supreme Court of New York granted a petition to abandon the art work as worthless in 1956. *Id.* The Harmon Foundation took possession of the art, restored it, and in 1967 transferred 1,154 items to the Smithsonian. *Id.* Other pieces were acquired by the Rosenfeld Gallery. *Id.* James H. Johnson on behalf of William H. Johnson's heirs demanded return of the artwork in 1995 and sought damages in 1997. *Id.* Receiving no satisfaction, Plaintiff filed suit representing William H. Johnson's heirs in 1997. The district court dismissed the complaint, holding that the

action of the New York Supreme Court was final and it had no authority under the Rooker–Feldman Doctrine to review the state court action. *Id.* at 351. Johnson's heirs also alleged that the Harmon Foundation had unlawfully retained other pieces of Johnson's art work (later transferred to the Smithsonian Institution), and never returned them when he requested they do so in 1946. *Id.* The court found the Harmon Foundation was a necessary party, but dismissed the matter because claims for conversion and replevin in New York were governed by a three-year statute of limitations. *Id.* at 353–54.

On appeal, the Second Circuit Court of Appeals affirmed the portion of the district court's decision based on the Rooker–Feldman Doctrine as applied to the Smithsonian and the Rosenfeld Gallery, but reversed the lower court's finding that the Harmon Foundation was a necessary party and the statute of limitations prevented it from being joined. *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 187–88 (2d Cir.1999). On remand, the district court found there was no longer any federal question jurisdiction since the Smithsonian Institution was out of the case, and there was no diversity jurisdiction between the remaining parties. *Johnson v. Smithsonian Inst.,* 80 F.Supp.2d 197 (S.D.N.Y.2000). The Second Circuit affirmed. *Johnson v. Smithsonian Inst.,* 4 Fed.Appx. 69 (2d Cir. 2001). Years later, the district court denied Gibbs' motion to vacate its judgment under Federal Rule of Civil Procedure 60(b). *See Johnson v. Smithsonian Inst.,* No. 97 Civ. 5190(VM), 2007 WL 3118866 (S.D.N.Y. Oct. 24, 2007).

Plaintiff has developed a conspiracy theory alleging that various government agencies and employees have engaged in a conspiracy against him, a claim which seems to underscore most of the causes of

actions alleged in this case and other cases.

In 2002, Plaintiff filed a complaint in the District of Maryland, claiming the Department of Labor had improperly suspended his disability benefits in 1996. *Gibbs v. United States,* Civ. Action No. 8:02–cv–45–JFM (D.Md. Jan. 4, 2002). The court denied Gibbs' requests for injunctive relief and mandamus, with the decision being affirmed by the Fourth Circuit Court of Appeals. *See Gibbs v. United States,* 45 Fed.Appx. 281 (4th Cir.2002).

In 2003, Gibbs was charged in the District of Maryland with mailing a threatening communication to the Secretary of Labor. (*United States v. Gibbs,* Crim. Action No. 8:03–cr–400–PJM) (D.Md. Sept. 8, 2003). He pled guilty, but later appealed. The Fourth Circuit affirmed the judgment. *See United States v. Gibbs,* 185 Fed.Appx. 258 (4th Cir.2006), *cert. denied,* 549 U.S. 1117, 127 S.Ct. 1005, 166 L.Ed.2d 712 (2007). Gibbs later filed additional motions, which the district court construed pursuant to 28 U.S.C. § 2255 and denied. *See Gibbs v. United States,* Civ. Action Nos. PJM–09–856, PJM–03–3550, Crim. Action No. PJM–03–400, 2009 WL 1097898 (D.Md., Apr. 22, 2009).

Notably, in his petition for certiorari, Gibbs raised issues similar to those alleged in this case. *See Gibbs v. United States,* No. 06–708, 2006 WL 3381597 (Petition for Writ of Certiorari filed Nov. 20, 2006). He alleged a criminal enterprise dedicated to protecting stolen art and implied the criminal charge against him was because of his attempts to recover the stolen art. *Id.* at *27.

In 2009, Plaintiff filed a new matter entitled "Supplemented 28 U.S.C. §§ 2241 & 2255 Motion, Pursuant to Rule 60 and 18 U.S.C. § 1964 (RICO)" in the United States District Court for the District of Maryland. *Gibbs v. United States,* Civ.

Action No. 8:09–cv–1779–PJM (D.Md. Jul. 6, 2009). In that 35–page motion, Plaintiff alleged the Assistant United States Attorney who prosecuted him in the criminal case did so as part of a criminal conspiracy to protect the claimed art theft. The district court dismissed the matter *sua sponte,* finding it lacked "basis in reality."

> For example, Gibbs claims that Judges Messitte, Motz, Bennett, and Chief Judge Legg in this district, Judge David A. Faber, United States District Judge for the Southern District of West Virginia, the FBI, and an Assistant United States Attorney have conspired to convict him. Additionally, Gibbs complains that the Court has ignored the largest art theft in history. His 26–page pleading also makes random reference to Sonia Sotomayer, United States Court of Appeals Judge for the Second Circuit, former Alaska Senator Ted Stevens, comedian Bill Cosby, Congressman John Lewis, and the Regents of the Smithsonian Institution. Lastly, Gibbs asserts that his indictment was defective and requests a "full and complete explanation" to his mother-in-law. The claims contained in this pleading are fantastic, delusional and fictitious; taken together, they satisfy the requirements for summary dismissal.

*See Gibbs v. United States,* Civ. Action No. 8:09–cv–1779–PJM (D.Md. Jul. 6, 2009) (Doc. # 2, Unpublished Order, dated Jul. 21, 2009).

## II. *Pro se* status

■ Plaintiff has filed the action *pro se. Pro se* complaints are to be held to a less stringent standard that those drafted by an attorney. *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986). However, in this case Plaintiff has been a member of the bar in South Carolina and has appeared and tried cases within the Second

Circuit. *See Johnson v. Smithsonian Inst.*, 9 F.Supp.2d 347 (S.D.N.Y.1998); 189 F.3d 180 (2d Cir.1999); 80 F.Supp.2d 197 (S.D.N.Y.2000); 4 Fed.Appx. 69 (2d Cir. 2001); 2007 WL 3118866 (S.D.N.Y. Oct. 24, 2007). Therefore, the Court sees no need to afford Gibbs the more lenient standard given to *pro se* litigants in review and consideration of their cases. *But cf. Gibbs v. United States*, Civ. Action No. 8:09–cv–856, 2009 WL 1097898 (D.Md. Apr. 22, 2009) (applying liberal standard for adjudging *pro se* pleading filed by Gibbs after noting questions concerning mental competency arose during the criminal proceeding). However, even if the Court were to use the liberal *pro se* standard, the undersigned's recommendations would not change. The leniency afforded to *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998).

## III. Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n. 2 (11th Cir.1997) (citation omitted). Despite Rule 8(a)'s liberal pleading requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir.2006) (emphasis omitted). Rule 8, which describes the general rules of pleadings, and Rule 10, which describes the form of pleadings, work together " 'to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.' " *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir.1996) (citation omitted). Moreover, in a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations "lumping" multiple defendants together are insufficient to permit the defendants, or the court, to ascertain exactly what plaintiff is claiming. *See West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed.Appx. 81, 86 (11th Cir.2008)[8] (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir.2007) and *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir.1997)).

Plaintiff's first complaint was stricken because the Court found the complaint constituted an impermissible "shotgun pleading" (Doc. # 5). Although the five counts alleged in the Second Amended Complaint no longer contain incorporation by reference to all allegations of each preceding count, the Second Amended Complaint nonetheless contains elements of an

---

**8.** Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R.App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36–2.

impermissible shotgun pleading. Plaintiff brings suit against the Department of Labor, Department of Defense, Department of Justice, and Does 1–100. Each count is directed at all Defendants. However, although Plaintiff refers to several individuals—Ms. DeCarlo, Dr. Moore, Kimberly A. Murray–Williams, Peter Stern, Michael Rosenfel, Patrick T. Ryan, AUSA Neil Corwin, Michael Rosenfeld, Rep. John Lewis, the actor Bill Cosby, Dr. David Driskell, Julia Bond, Mary Beatie Brady—he does not provide sufficient information to allow Defendants to discern who Does 1–100 might be. Moreover, the complaint lumps all of the Defendants together so that it is not clear exactly what Plaintiff is claiming against each Defendant. *See West Coast Roofing,* 287 Fed.Appx. at 86.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility means the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Factual allegations must be enough to raise a right to relief above the speculative level, based on the assumption that the allegations are true (even if doubtful in fact). *Bell Atlantic,* 550 U.S. 544, 127 S.Ct. 1955.

The Second Amended Complaint states the "gravamen of Plaintiff's suit is filed pursuant to the Racketeering and Influence Corrupt Organization Act (RICO): 18 U.S.C. §§ 1961, 1962 & 1964, and conspiracy. AND, [sic] the theft of Plaintiff psychiatric medical records from the State of Connecticut: to the extent said records were used to "drive" Plaintiff's arrest and destruction" (Doc. # 11, at 2) (emphasis in original). Plaintiff is suing Defendants "to stop the racketeering and conspiracy implemented against Plaintiff, and to recover disability benefits Plaintiff loss [sic] as a direct result of improper actions taken against Plaintiff: including but not limited to retaliation against Plaintiff for demanding his legal rights under 5 U.S.C. §§ 8123(d) & 5596." *Id.*

Quite frankly, Plaintiff's Second Amended Complaint is rambling and hard to understand. It appears, however, Plaintiff alleges his disbarment and criminal conviction, and the decision regarding his disability claim, are interrelated by virtue of a conspiracy to cover up "the largest art theft in U.S. history" and in retaliation for whistle blowing. As a whole, and individually, the claims contained in the Second Amended Complaint are fantastical and border on delusional; certainly the Second Amended Complaint does not "state a claim to relief plausible on its face." *Bell Atlantic,* 550 U.S. at 570, 127 S.Ct. 1955.

Specifically, the Second Amended Complaint contains five counts. Count I alleges violation of 5 U.S.C. §§ 8123(d) & 5596. Plaintiff appears to allege the Department of Labor improperly withheld disability benefits. Plaintiff requests an injunction and $400,000. Count II alleges Plaintiff is a whistle blower and appears to allege the Department of Defense used employee travel funds to purchase computers. Plaintiff requests $300 billion and that he be re-instated to his position. Count III is for negligence and appears to allege several individuals stole Plaintiff's medical records from the State of Connecticut for the purpose of causing Plaintiff's mental breakdown and to have Plaintiff disbarred and imprisoned. Plaintiff also refers to an art conspiracy. Plaintiff alleges he has

been damaged in the amount of $10 billion. Count IV alleges violations of 42 U.S.C. §§ 1985, 1986 & 1988. Plaintiff again refers to an art conspiracy involving the actor Bill Cosby, several congressmen, the Department of Justice, and the Harmon Foundation. Plaintiff then alleges, "AUSA Corwin combined and conspired with Investigator Ryan and Ms. DeCarlo for the purpose of denying Plaintiff his disability benefits awarded by the Secretary." Plaintiff requests $5 billion. Count V alleges violation of 42 U.S.C. § 1964.[9] Plaintiff alleges Defendants conspired to profit from stolen artwork and injured Plaintiff by having him disbarred and imprisoned. Plaintiff requests an injunction and alleges he has been damaged in the amount of $300 billion.

Plaintiff's claims are due to be dismissed for several reasons. Plaintiff alleges four underlying injuries resulted from the "conspiracy" to cover up art theft—an unfavorable decision from the Department of Labor's Office of Workers' Compensation Programs ("OWCP"), his conviction in the District of Maryland, his disbarment by the Supreme Court of South Carolina, and his failure to recover "$5 billion in stolen art" based upon the decisions of the District Court for the Southern District of New York in the *Johnson v. Smithsonian Institution* cases noted above. Thus, Plaintiff apparently asks this Court to review a decision made by OWCP under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101, et seq., to find his conviction for mailing a threatening communication to the Secretary of Labor to be invalid, and to reverse various decisions of the Supreme Court of South Carolina and the District Court for the South-

ern District of New York. This Court does not have the jurisdiction to do so.

## A. OWCP's FECA determination (Count I)

Several of Plaintiff's claims refer to the determination as to his disability benefits made by OWCP under FECA, 5 U.S.C. § 8101, et seq. However, FECA expressly precludes judicial review of such decisions, and thus this Court lacks subject matter jurisdiction to review the decision made by the Department of Labor in Plaintiff's disability case. *See* 5 U.S.C. § 8128(b); *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991) ("FECA contains and 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage.").

The Eleventh Circuit recognizes two instances in which a federal court may exercise jurisdiction over a final decision of the Secretary under FECA—to review charges that the Secretary violated a clear statutory mandate or prohibition, and to consider constitutional claims. *Woodruff v. U.S. Dept. of Labor,* 954 F.2d 634 (11th Cir.1992). In the instant case, Plaintiff fails to show that he satisfies an exception to the FECA bar. "A mere allegation of a constitutional violation" is not sufficient to avoid the FECA bar. *Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir.1985). To the extent Plaintiff is alleging a due process violation, he has failed to allege facts to support such a claim. Plaintiff states he was provided an opportunity to appeal his claim and elected to have a hearing before the Branch of Hearings and Review (Doc. # 11, at 4). However, Plain-

---

**9.** The undersigned notes no such section exists. However, review of the claims alleged in Plaintiff's proposed Fourth Amended Complaint reveals Plaintiff raises a claim under 18 U.S.C. § 1964 (see Doc. # 81–1, Count XV). Thus, the undersigned will construe this Count to allege violation of 18 U.S.C. § 1964.

tiff also states he "refused to participate in the hearing" because it was a telephone hearing (Doc. # 11 at 4–5). The regulations governing FECA claims expressly provide that "at the discretion of the hearing representative," a hearing before the Branch of Hearings and Review "may be conducted by telephone or teleconference." 20 C.F.R. § 10.615; *see also Sanford v. Comm'r of IRS*, 283 Fed.Appx. 780, 783 (11th Cir.2008) (holding plaintiff's due process rights were not violated when the IRS offered him a telephone hearing only, rather than a face-to-face hearing); *Bigby v. INS*, 21 F.3d 1059, 1064 (11th Cir.1994) (holding agency's decision to hold telephonic hearing entitled to deference). Plaintiff further alleges the determination of benefits was motivated by, and made in retaliation for, Plaintiff not dropping his claim for interest. FECA does not contain a provision allowing for the payment of interest on benefits. *See Proctor v. United States*, 95 Fed.Cl. 437, 442 (Fed.Cl.2010) ("The Secretary is precluded from awarding interest to employees under FECA because there is no statutory waiver of sovereign immunity to permit the award of interest."); *Ralph v. Moody*, 42 ECAB 364, 370 (1991) ("There is no provision in the Act for payment of interest on awards of compensation.").

Plaintiff also alleges violation of the Back Pay Act, 5 U.S.C. § 5596. However, the Court cannot discern how this statute applies to Plaintiff's allegations regarding his FECA determination, and Plaintiff does not elaborate.[10] The Back Pay Act awards back pay and interest to correct an unjustified personnel action that deprived an employee of pay. *Estate of Schultz v. Potter*, 349 Fed.Appx. 712, 718 (3d Cir. 2009) (citing 5 C.F.R. §§ 550.805–550.806). FECA payments are not awarded "as a result of an unjustified or unwarranted personnel action," but as compensation for work-related injuries. 5 U.S.C. § 5596(b)(1). Thus, it is unclear how Plaintiff's allegations concerning the determination of his FECA benefits relate to the Back Pay Act.

Moreover, it does not appear venue is proper in the Middle District of Florida. Section 1391 of Title 28, provides that a civil action, in which an officer or employee of the United States, an agency of the United States, or the United States itself is named as a defendant, may be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e), *amended by* Pub.L. No. 112–63, 125 Stat. 758 (Dec. 7, 2011); *see also Sierra Club v. Leathers*, 754 F.2d 952, 955 (11th Cir. 1985). Plaintiff states his disability claim is administered by Kimberly A. Murray-Williams, a claims examiner in the Jacksonville, Florida Office of the Department of Labor. However, the conduct alleged in his Second Amended Complaint appears to have no connection to this District. The allegations regarding the determination of his FECA claim relate to the actions of a Ms. DeCarlo. Defendants submitted an affidavit from Antonio A. Rios, the Deputy Director for Federal Employees' Compensation within OWCP, who stated Linda DeCarlo is a former OWCP Division of Federal Employees' Compensation employee "who has never worked in or as a DFEC supervisor in the Jacksonville Field Office" (Doc. # 27–1, at 2).[11]

---

**10.** Plaintiff's only reference to this statute is in the heading for Count I.

**11.** "In ruling upon a motion to dismiss, the district court may consider an extrinsic docu-

Furthermore, the documents related to Gibbs' FECA determination, attached as exhibits to Defendants' Motion to Dismiss, do not support any connection to Jacksonville, Florida (*see* Docs. # 27–1 through # 27–6). For example, a letter written to Gibbs from Linda DeCarlo contains a letterhead with a Washington, D.C. address (Doc. # 27–5, at 9), and letters from claims examiner Kimberly A. Williams and hearing representative Paula Strange contain letterhead with a London, Kentucky address (Doc. # 27–5 at 2, 11). The only reference to Jacksonville is contained in a letter from Senior Claims Examiner Analisa Kobelt–Walker who directs Gibbs to send a check or money order for overpayment to: "US Dept. of Labor, *DFEC Jacksonville*, P.O. Box 403376, Atlanta, GA 30384–3376" (Doc. # 27–4, at 49) (emphasis added). This one, ambiguous reference to Jacksonville does not support Plaintiff's assertion that venue is proper in this District. *See* 28 U.S.C. § 1391(e) (venue lies where a "*substantial* part of the events or omissions giving rise to the claim occurred") (emphasis added).

### B. Alleged Retaliation for Whistle Blower Activities (Count II)

Plaintiff alleges he is a whistle blower and cites to the False Claims Act ("FCA"). The FCA provides a penalty and treble damages against any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment."

31 U.S.C. § 3729(a)(1)(A). The FCA allows a private cause of action only by means of a *qui tam* suit to recover "for harm done to the Government." *See Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 97 (2d Cir.2009). Nonetheless, Plaintiff alleges he became a whistle blower in 1986, and his claim is thus time-barred under the FCA's statute of limitations. *See* 31 U.S.C. § 3731(b).[12] Moreover, the allegations of the Second Amended Complaint are insufficient to establish that venue properly lies with the Middle District of Florida. Again, the conduct alleged seems to have no connection to this District. *See* 28 U.S.C. § 1391(e); *Sierra Club*, 754 F.2d at 955.

### C. Negligence allegations (Count III)

Plaintiff alleges several individuals stole Plaintiff's medical records from the State of Connecticut for the purpose of causing Plaintiff's mental breakdown and to have Plaintiff disbarred and imprisoned, which is somehow related to the alleged art conspiracy (*see* Doc. # 11 at 6). Plaintiff alleges the Secretary of Labor "breached her duty to protect Plaintiff" as a whistle blower and this directly and proximately caused Plaintiff's psychological breakdown and conviction. *Id.* at 7–8. Plaintiff alleges "but for their improper actions, Plaintiff would have recovered $5 billion in stolen art." *Id.* at 8. This latter claim appears

---

ment if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC,* 600 F.3d 1334, 1337 (11th Cir.2010).

12. Section 3731(b) provides:
A civil action under section 3730 may not be brought—
(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last. 31 U.S.C. § 3731(b). Under either scenario, Plaintiff's action is time-barred.

nonsensical in view of the court opinions in the *Johnson v. Smithsonian* cases.[13]

Actions for negligence against the United States fall under the Federal Tort Claims Act, which requires Plaintiff exhaust administrative remedies by presenting an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a).[14] Plaintiff has failed to allege he has met this prerequisite. Moreover, Plaintiff has failed to provide sufficient information for the Court to determine if the statute of limitations has expired. *See* 28 U.S.C. § 2401 (providing "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). Unless a plaintiff complies with these requirements, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The burden is on the plaintiff to plead and prove compliance. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). Plaintiff has not pled and proven compliance with the statutory mandates. Finally, the allegations are insufficient to establish that venue is properly with the Middle District of Florida. Once again, the conduct alleged appears to have no connection to this District. *See* 28 U.S.C. § 1391(e); *Sierra Club*, 754 F.2d at 955.

## D. Conspiracy claims and RICO (Counts IV and V)

The bulk of Plaintiff's complaint refers to an alleged art conspiracy involving the actor Bill Cosby, congressmen, the Department of Justice, and the Harmon Foundation. Plaintiff alleges Defendants conspired to profit from stolen artwork and injured Plaintiff by having him disbarred and imprisoned. Plaintiff alleges, "AUSA Corwin combined and conspired with Investigator Ryan and Ms. DeCarlo for the purpose of denying Plaintiff his disability benefits awarded by the Secretary" (Doc. # 11 at 9).

These claims are subject to dismissal for failure to state a claim upon which relief can be granted. The Supreme Court has held § 1983 claims by a convicted plaintiff for alleged constitutional harms are barred if recovery on the claim would necessarily imply that the conviction was unlawful. *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Although the Eleventh Circuit has not addressed the issue, a number of courts have held that the rule established by the Supreme Court in *Heck* applies to civil RICO claims. *See e.g., King v. Farris*, No. 5:08–CV–186(CAR), 2008 WL 5115062 (M.D.Ga. Dec. 3, 2008) (dismissing RICO claim where Plaintiff did not claim any injury apart from his conviction); *Harrison v. Grand Jurors*, No. 3:05–CV–348/MCR/MD, 2006 WL 354218, at *3 (N.D.Fla. Feb. 13, 2006) ("*Heck* applies equally to civil RICO actions where the

---

**13.** See *Johnson v. Smithsonian Inst.,* 9 F.Supp.2d 347 (S.D.N.Y.1998); 189 F.3d 180 (2d Cir.1999); 80 F.Supp.2d 197 (S.D.N.Y. 2000); 4 Fed.Appx. 69 (2d Cir.2001); 2007 WL 3118866 (S.D.N.Y. Oct. 24, 2007).

**14.** Section 2675(a) reads in pertinent part:
An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the neg-

ligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.
28 U.S.C. § 2675(a).

RICO claim collaterally attacks a criminal conviction."); *Williams v. Hill*, 878 F.Supp. 269 (D.D.C.1995), *aff'd*, 74 F.3d 1339 (D.C.Cir.1996) (concluding that *Heck* was applicable to civil RICO action); *Hermansen v. Chandler*, 211 F.3d 1269 (Table), 2000 WL 554058, at *2 (6th Cir.2000) (unpublished opinion) ("This court has consistently applied the [*Heck* ] princip[le] to civil actions under RICO ....") (citing other unpublished Sixth Circuit cases); *but see Hunter v. Gates*, No. CV99–12811, 2001 WL 837697, at *3–4 (C.D.Cal. Apr. 16, 2001) (holding the *Heck* rule does not apply to civil RICO claims).

Plaintiff's conspiracy and RICO claims also seek to impeach the determination as to his disability benefits made by OWCP under the Federal Employees' Compensation Act ("FECA"). However, as stated previously, Plaintiff has failed to show that he satisfies an exception to the FECA bar, and this Court therefore lacks subject matter jurisdiction to review the decision made by the Department of Labor.

Numerous courts have found Plaintiff's claims regarding a criminal enterprise dedicated to protecting stolen art and a conspiracy to retaliate against him for attempting to recover the stolen art to be without merit. *Gibbs v. United States*, Civ. Action No. 8:09–cv–1779–PJM (D.Md.) (Doc. # 2, Unpublished Order, Jul. 21, 2009); *Gibbs v. United States*, 185 Fed. Appx. 258, at *1 (4th Cir.2006), *cert. denied*, 549 U.S. 1117, 127 S.Ct. 1005, 166 L.Ed.2d 712 (2007); *In the Matter of M. Eugene Gibbs*, 349 S.C. 261, 562 S.E.2d 639, 646–47, 647–48 (S.C.2002); *Gibbs v.*

*United States*, Civ. Action No. 8:02–cv–45–JFM (D.Md.) (Doc. # 27), *aff'd*, 45 Fed. Appx. 281 (4th Cir.2002).

The undersigned similarly finds that Plaintiff's conspiracy and RICO claims are subject to be dismissed for failure to state a claim upon which relief may be granted. "An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Here, Plaintiff has failed to allege sufficient facts to show the existence of a conspiracy to conceal stolen artwork, imprison him, and deprive him of disability benefits.[15] "Courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Stricker v. Ganey*, No. 8:09–CV–1875–T–27TGW, 2010 WL 2640320, at *3–4 (M.D.Fla. Jun. 10, 2010) (citing *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir.2010)). Moreover, as discussed previously, the events alleged did not occur in the Middle District of Florida, or within the statute of limitations.

## IV. Motions to Amend

After the Motion to Dismiss was filed, Plaintiff filed a motion to amend attaching the proposed Third Amended Complaint (Doc. # 65)[16] on August 16, 2011. On

---

**15.** The undersigned notes the Department of Labor conducted an investigation into Gibbs' employment status to determine if he had falsely claimed to be receiving no other forms of compensation (*see* Doc. # 27–2, Exhibit 5). Pursuant to this investigation, the Department of Labor determined Gibbs was a practicing attorney and managing partner of a law firm

in South Carolina during the time period in question. *Id.* at 12.

**16.** The proposed amended complaint filed as Doc. # 65–1 has several deficiencies in numbering, including two Counts Five and Six. Count Four is out of sequence. The last three counts (Four, Five and Six) (which are after

October 14, 2011, Plaintiff filed another motion to amend, to which he attached the proposed Fourth Amended Complaint (Doc. # 81).[17]

■ Federal Rule of Civil Procedure 15(a) mandates that a court freely allow amendments to a complaint "when justice so requires." However, the proposed complaints contain similar deficiencies including lack of subject matter jurisdiction, lack of proper venue, continued shotgun pleadings, and failure to state a plausible claim. Furthermore, as noted above, many of the claims have been raised previously in cases dismissed in other jurisdictions. "Although the federal rules generally favor a liberal amendment policy, justice does not demand that [a plaintiff] be given leave to append frivolous or repetitive allegations to her complaint at any stage in the proceedings." *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991). A court need not allow amendment where amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

The allegations and arguments contained in the proposed Fourth Amended Complaint relate to the same issues contained in the Second Amended Complaint—the art conspiracy, Plaintiff's disbarment and criminal conviction, and the FECA determination. However, Plaintiff presents no new facts or arguments which would correct the deficiencies related to subject matter jurisdiction, failure to state a claim upon which relief may be granted, venue, or the time limitations previously discussed. Moreover, the Fourth Amended Complaint contains new counts for replevin, conversion, constructive trust, and unjust enrichment (Counts I–V), wherein Plaintiff requests return of the artwork allegedly stolen.

Pursuant to the Rooker—Feldman Doctrine there is a lack of subject matter jurisdiction over claims regarding artwork that was the subject of a 1956 New York State Supreme Court determination.[18] Furthermore, Plaintiff lacks standing to bring such claims, as his only relationship to the artwork is from his acting as legal counsel for the artist's heirs.

The Fourth Amended Complaint also contains counts for conversion, defamation, and assault and battery (Counts II, VI and X), which are governed by the Federal Tort Claims Act, and Plaintiff fails to satisfy jurisdictional requirements to bring an FTCA claim for the same reasons discussed previously. Plaintiff also alleges two breach of contract claims (Counts VII and VIII), but such claims, if properly

Count Eleven) contain attempted adoption of earlier paragraphs, the exact type of shotgun pleading the Court previously struck from the record (*see* Doc. # 5, Court Order).

**17.** As noted earlier, because Plaintiff subsequently filed an Amended Motion for Leave to File an Amended Complaint (Doc. # 81), the Court deems the earlier motion (Doc. # 65) to be *moot*.

**18.** The Rooker–Feldman Doctrine stands for the proposition that federal district courts do

not have jurisdiction to review state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (holding only the Supreme Court can entertain an appeal to reverse or modify a state court judgment) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (explaining that federal courts do not have jurisdiction over claims which are "inexplicably intertwined" with prior state court determinations).

stated, must be brought in the Court of Federal Claims. *See* 28 U.S.C. § 1491. The remaining counts (Counts IX–XV) for due process and equal protection, false imprisonment, whistle blower, negligence, conspiracy, and RICO are deficient for the reasons previously discussed.

The undersigned finds amendment would be futile. *See Baker v. Library of Congress*, 260 F.Supp.2d 59, 68 (D.D.C. 2003) (holding proposed amendment would be futile where plaintiff's motion for leave to file amended complaint contained no new facts or arguments that would defeat defendant's arguments for dismissal).

### V. Conclusion

"A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume unlimited judicial resources and put defendants to effort and expense." *Tyler v. Carter*, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir.1994). Plaintiff alleges a grand conspiracy between several government agencies and individuals across the United States and occurring over the course of several decades. Plaintiff's claims lack a basis in reality and stop well short "of the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** and the motions to amend the complaint be **DENIED.**

**DONE AND ORDERED** at Jacksonville, Florida this 17th day of January, 2012.